489 F.Supp. 521 (1980)
Roland L. HALSTED, Plaintiff,
v.
Patricia Robert HARRIS, Secretary of Health, Education and Welfare, Defendant.
No. 79-1117C(A).
United States District Court, E. D. Missouri, E. D.
March 10, 1980.
*522 Robert J. Blackwell, Mayhugh, Harris & Blackwell, Flat River, Mo., for plaintiff.
Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM  OPINION
HARPER, District Judge.
This is a timely action filed in the Federal District Court under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, denying plaintiff's application for disability and supplemental security income benefits. The plaintiff had previously filed an application for the same benefits on July 14, 1976, which was finally denied on April 22, 1977.
This particular petition was filed on September 6, 1978, and was considered and reconsidered by the Secretary, and the claim was denied. The plaintiff subsequently requested a hearing, which was held on March 15, 1979, at which he and his counsel appeared and he testified. On May 31, 1979, the Administrative Law Judge rendered a decision against the plaintiff finding him not to be under a "disability" as defined in the Act. On July 31, 1979, the Appeals Council of the Secretary affirmed the hearing decision and that decision becomes the final decision of the Secretary, reviewable by this Court.
The issue in the present appeal is whether there is substantial evidence to support the finding of the Secretary that plaintiff is not totally and permanently disabled, due to high blood pressure and an enlarged heart with a murmur. Plaintiff's petition filed by his attorney, cites fourteen physical ailments, generally associated with high blood pressure and cardiac problems. He claims these ailments have made him totally and permanently disabled and that the Secretary has erred in finding against him and does not have substantial evidence to support his decision. He seeks summary judgment. The Secretary's memorandum claims that the plaintiff has had a full and fair hearing and that the decision of the Secretary is made in accordance with applicable statutes and regulations and is supported by substantial evidence. The Secretary also seeks summary judgment.
The hearing revealed that plaintiff is 42 years of age, 5'-7" tall and weighs about 175 pounds, a gain of 25 pounds over the past two or three years. He lives with his wife and three children in Richwoods, Missouri (Tr. 22-24). He claimed to have the equivalent of a high school education by virtue of some training in the military service, in which he served in the Air Force from April of 1954 to November of 1957. He worked as a radar and radio repairman (Tr. 25-26).
His work record revealed that in the early 1960's, he worked as a foreman at a pencil manufacturing company in Maplewood, Missouri. He was there some five months. Subsequent to that, from 1962 to 1964, he was a cook and a deck hand in the merchant marine (Tr. 26-27). After that and up to January of 1974, he worked as a long distance truck driver for various companies, including United Van Lines, North American Van Lines and Lyons Van Lines. Then, in March of 1974 and until June of 1974, he worked as a welder and fitter in Texas (Tr. 29). In August of 1974, he commenced working as a security guard superintendent, supervising some 150 guards. He worked at that job until May of 1975.
*523 After that, and specifically in June of 1975, he worked as a dishwasher at the St. Louis Country Club for a month or so. He then worked as a machine operator for a furniture company in July and August of 1975, operating electric saws (Tr. 32). He then went to work for a plastic manufacturing company operating a plastic molding machine. From August of 1975, until June of 1977, he did not work at all and sought the aid of vocational rehabilitation, who sent him to Goodwill Industries to train him in work for small appliances. It was during this period he claims his blood pressure would cause nervousness and that he was unable to work (Tr. 33-34).
He resumed working for two weeks in September of 1977, as an assistant manager at Radio Shack, a dealer in radio and electronic appliances. He was only there briefly and returned as a security guard, but lost that job because of being unable to handle the job correctly (Tr. 35-36).
In November and December of 1977, he worked for Crown Foods as a wholesale order writer. He stated the pressure on the job became too great and he was given the choice of quitting or being fired. He elected to quit (Tr. 38-39). He returned to Stoners Security briefly and stopped working in January of 1978 (Tr. 39-40).
He stated he first discovered he had hypertension about five years ago when he had a truck accident in Houston, Texas. He stated his blood pressure caused him to become dizzy and disoriented. He stated the medication helped him somewhat, but that he had chest pains about once a month (Tr. 42-44). He claimed the chest pain would build up and start down his left arm, sometimes staying with him for an hour or two.
He stated he went to Firmin Desloge Hospital in St. Louis for a bunch of tests and remained in the hospital for ten days. He claimed to have been admitted on an emergency basis because of chest pains and difficulty in breathing (Tr. 46-47).
He claimed his nerves became so bad that it caused nausea. He said that four different doctors had recommended that he seek psychiatric help. He stated he takes Minipress, a blood pressure drug and Hydrodiuril, a diuretic. Also, he claims he takes Inderal, a heart medication, four times a day. He also takes Chlorpromazine, three times a day.
He drove his automobile to St. Louis on the day of his hearing, but states that he is unable to assist in the housework or yard care. He subsists on A.D.C. of $290.00 a month and he receives $181.00 a month in food stamps.
Under cross-examination from his attorney, he stated he was not able to bend well and could only lift about five pounds (Tr. 58-59).
Medical reports include hospital records from St. Louis University Hospital and Missouri Division of Family Services. There are also reports from Drs. James Drake, M.D.; M. Kabir, M.D.; Vic W. Kwan, M.D.; R. V. Simpelo, M.D.; and T. K. Mangelsdorf, M.D.
A St. Louis University Hospital report shows an admission of Halsted on March 1, 1978, with a complaint of a stabbing chest pain radiating down his left arm. The chest pains caused a thorough examination for myocardia infarction, which proved to be negative. His echocardiogram was normal and a stress test produced no significant changes. He was discharged with a diagnosis of chest pain of unknown etiology, hypertension and abnormal glucose tolerance test. He was attended by Dr. Drake while at St. Louis University Hospital (Tr. 206-212).
A report submitted by James R. Drake, M.D., dated September 19, 1978, revealed that he had attended claimant from December 20, 1976, until his most recent visit on August 16, 1978. His report indicated that the source of the chest pain had never been determined and he made an interesting observation that, "Patient is probably aware that he can control or not control his BP by taking or not his medications." There were no other spectacular observations in Dr. Drake's report (Tr. 216-217).
*524 A medical report from V. W. Kwan, M.D., was dated November 28, 1978, his observations were unspectacular with a diagnosis of essential hypertension and chest pains of unknown cause (Tr. 218-223).
A report from the Washington County Memorial Hospital revealed pulmonary function studies performed and was dated November 28, 1978. These studies were performed by Dr. Kwan. Seven pages of respirometer chart paper reveal an observation of borderline pulmonary function studies.
A letter by Dr. T. K. Mangelsdorf is dated April 22, 1979. Plaintiff came to Dr. Mangelsdorf complaining that, "I've got an enlarged heart with a murmur, hypertension and nervousness." Dr. Mangelsdorf, a psychiatrist, observed that Halsted is an angry man, who has had personality problems over the years, involving alcoholism and a bad conduct discharge from the military. He indicated to Dr. Mangelsdorf that he doesn't do much and he doesn't want to do anything.
A report from Dr. Mohammed A. Kabir, a psychiatrist, dated January 29, 1976, indicates Halsted advised Kabir that he was disgusted with life, having high blood pressure and complained of insomnia and variable appetite. He also complained of headaches and a prior back injury. Considering his history and present complaints, Dr. Kabir found an anxiety-depressive reaction. He advised that Halsted was not amenable to a competitive type of job like a salesman, but more sedative type of activity would be suitable for his needs (Tr. 114-115).
The Administrative Law Judge, in arriving at his rulings, found the claimant to be a "younger individual" as described in Regulation 404.1506 and 416.906. He found him to have a high school education as defined in Regulation 404.1507 and 416.907. The Administrative Law Judge concluded that claimant's alleged combined impairments would not preclude him from performing at least sedentary work of a non-stressful nature.
Accordingly, applying the grid system recently adopted by the Secretary,[*] the Administrative Law Judge found that Rule 201.29, Table No. 1, Appendix 2, Subpart P, Regulations No. 16, was applicable. The new medical-vocational guidelines contained in Appendix 2, became effective on February 26, 1979. They were enacted pursuant to the Secretary's rule making power, Parts 404 and 416 of Chapter 3 of Title 20 of the C.F.R. regarding determinations of disability. The Secretary found that the facts of the case reveal that the claimant is a "younger individual" with a high school education and previous work experience, which combined with his present condition, allows him a residual capacity for sedentary work and, therefore, is not disabled. The Secretary further found specifically:
(1) The claimant met the special earnings requirements of the Act for a period of disability and disability insurance benefits in December, 1977, claimant's alleged onset date, and continued to meet those requirements at least through June 30, 1978.
(2) Claimant has hypertension which is adequately controlled and has not resulted in severe end-organ complications. He has only infrequent chest pains of an unknown etiology. He has no severe mental impairment within the meaning of the Act.
(3) It is concluded that pain would not prevent the performance of at least sedentary work on a sustained basis.
(4) His combined impairments, including pain, would not preclude him from performing certain types of substantial gainful activity.

*525 (5) Claimant is unable to perform his former jobs. These jobs were unskilled to semi-skilled in nature.
(6) The claimant has the residual functional capacity for sedentary work, as that term is defined in Section 404.1510 of Social Security Regulation No. 4 and Section 416.910 of Regulation No. 16.
(7) The claimant is 42 years old, which is defined as a younger individual by Section 404.1506 of Regulation No. 4 and Section 416.906 of Regulation No. 16.
(8) Claimant possesses a high school education.
(9) Claimant's work as an order writer, security guard supervisor, assistant office manager and plastic machine tender provided claimant with skills that are transferable to work other than that previously performed.
(10) Regulation 404.153 and Rule 201.29, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, and Regulation 416.913 and Rule 201.29, Table No. 1, Appendix 2, Subpart I, Regulation No. 16, direct that the claimant, considering his maximum sustained work capability, age, education and work experience, be found "not disabled".
(11) Claimant was not under a "disability", as that term is defined in the Social Security Act, as amended, at any time on or prior to June 30, 1978, the date on which the claimant was last insured with reference to eligibility for a period of disability and disability insurance benefits.
(12) Claimant was not "disabled", as that term is defined in Title XVI of the Act, on the date of his application for supplemental security income or at any time through the date of this decision.
Whether or not this new grid system of placing a claimant in various categories, and then concluding the availability of residual skills, which system is based upon a lengthy and extensive study, would replace the use of the vocational counselor, is of some concern to this Court. The Eighth Circuit has clearly indicated that when a Social Security claimant has met his burden of proof with evidence indicating that he is unable to return to his prior employment, said burden transfers to the Secretary to prove claimant's ability to perform less rigorous occupations. Brinker v. Weinberger, 522 F.2d 13 (8th Cir. 1975). A vocational counselor is recommended for this purpose. Garrett v. Richardson, 471 F.2d 598 (8th Cir. 1972).
We have examined Hicks v. Califano, 600 F.2d 1048 (4th Cir. 1979), which discusses the use of the new H.E.W. regulations, which were effective on February 26, 1979. The Hicks case which resulted in a remand for further examination by the Secretary does not totally solve our apprehension because a vocational expert was present throughout the hearing, and was given a copy of the medical evidence in the file and testified accordingly. The Fourth Circuit in Hicks did not question the use of the grid system, and seemed to tacitly endorse it. LEXIS has furnished us with another case, Fains v. Harris, Secretary of Health, Education and Welfare, 481 F.Supp. 30, in the United States District Court of the District of Maryland, which was decided on October 25, 1979. There, the District Judge affirmed the findings of the Secretary, who applied the new regulations in assessing residual employment ability. However, the Maryland court had the use of a vocational expert, who testified that the claimant, a former fork lift operator, had transferable skills as a gas and oil man for a fleet operation, or a car rental agency, and accordingly, was not disabled within the meaning of the Act.
We are satisfied that the Administrative Law Judge in the instant case has addressed the four basic factors of the new regulations, namely residual functional capacity, age, education and acquired skills.
The plaintiff has the burden of proving his disability. He has the obligation to show some medically determinable physical *526 or mental impairment which prevents him from engaging in any substantial gainful activity for a continuous period, which has lasted or can be expected to last for not less than twelve months. Russell v. Secretary of Health, Education and Welfare, 540 F.2d 353 (8th Cir. 1976); Timmerman v. Weinberger, 510 F.2d 439 (8th Cir. 1975).
Concerning Halsted's claims of heart trouble, the record would indicate that they are almost totally subjective. Repeated EKG's were normal. Stress tests precipitated no abnormalities. There was no evidence of a myocardial infarction. There was no evidence of heart enlargement or arrhythmia.
Likewise, Halsted's claims of hypertension lack medical support. Dr. Drake found his hypertension to be under fair control and concluded that he could work absent stress. Firmin Desloge Hospital, noting a blood pressure of 120/70, was asymptomatic. Other examinations found no murmurs or gallops. X-rays of the chest showed no abnormalities. Plaintiff's claims of disabling back pain were refuted by St. Louis University Hospital examination, which showed an 80% range of motion and x-rays which revealed no abnormalities. Psychiatric examination was uneventful, other than a finding of hostility in the claimant.
The Social Security Law Judge recognized the plaintiff's subjective complaints and recited them in his findings. His face to face observation of plaintiff's appearance and demeanor is advantageous in assessing credibility on a claim which is basically subjective. All pain is obviously not disabling. Roark v. Califano, 564 F.2d 14 (8th Cir. 1977). The medical evidence presented here is obviously conflicting. The claimant's subjective complaints are not only not substantiated by medical evidence, but on the whole, are contradicted by the medical evidence. Where such conflict exists, it is the province of the Secretary to resolve these differences. Janka v. Secretary of Health, Education and Welfare, 589 F.2d 365 (8th Cir. 1978); Laffoon v. Califano, 558 F.2d 253 (5th Cir. 1977).
Claimant concedes that he has had a full hearing, accompanied by his lawyer, and this Court so finds. Also, it is the conclusion of this Court that there is substantial evidence to support the Secretary's decision that the plaintiff was not under a "disability" as defined in the Social Security Act, as amended, and is not entitled to disability insurance benefits or to supplemental security income benefits. Accordingly, we grant the Secretary's motion for summary judgment and deny a similar motion made by the claimant. The Court adopts this memorandum-opinion as its finding of fact and conclusions of law and the Clerk of this Court will prepare the order in accordance with the Court's finding herein.
NOTES
[*] 20 C.F.R. § 404.1502 was revised at 43 Fed.Reg. 55362 (November 28, 1978). Sections 404.1503 through 404.1507 were redesignated, respectively, as sections 404.1514 through 404.1518 at 43 Fed.Reg. 55362 (Nov. 28, 1978): New sections 404.1503 through 404.1513 were added at 43 Fed.Reg. 55362-55366 (November 28, 1978). Subpart P of Part 404 was also amended by redesignating the Appendix (Listing of Impairments) as Appendix 1 at 43 Fed.Reg. 55366 (November 28, 1978), and a new Appendix 2 (Medical-Vocational Guidelines) was added at 43 Fed.Reg. 55366-55370, 55375-55379 (November 28, 1978).