Constance L. **WALKER**, Plaintiff,

v.

Patricia Roberts **HARRIS**, Secretary of Health, Education & Welfare, Defendant.

No. 79–4013.

United States District Court, D. Kansas.

Sept. 30, 1980.

Rose Marino, Kansas Legal Services, Inc., Lawrence, Kan., for plaintiff.

Mary Briscoe, Asst. U. S. Atty., Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Constance Walker (plaintiff/claimant) brings this action under Section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3) to review a "final decision" of the Secretary of Health, Education, and Welfare,[1] [hereinafter Secretary] denying her application for supplemental security income disability benefits as provided by Section 1602 of the Act, 42 U.S.C. § 1381a. Section 1631(c)(3) of the Act incorporates by reference Section 205(g) and (h) of the Act, 42 U.S.C. § 405(g) and (h).

The record reflects that on April 15, 1976, plaintiff filed an application for supplemental security income disability benefits. The application was denied initially and on reconsideration by the Social Security Administration. Plaintiff filed a request for a hearing before an administrative law judge on April 27, 1977. A hearing was held and a decision denying benefits was issued on December 20, 1977. The ALJ's decision became the final decision of the Secretary when the Appeals Council approved the decision on July 26, 1978. On February 12, 1979, plaintiff appealed to this court. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this court remanded the case to the Secretary at the request of the Appeals Council for further administrative proceedings because the tape of the hearing before the ALJ could not be transcribed. Thereafter, on July 11, 1979, the Appeals Council directed a vacation of its denial of plaintiff's application and remanded the case to another ALJ to hold a de novo hearing. A hearing was held and again a decision denying benefits was issued on September 28, 1979. In denying the application, the ALJ made the following findings:

1. Claimant has various impairments caused by medical conditions diagnosed as: "1) Mild degenerative spondylosis of the cervical and lumbosacral spine, associated with congenital loss of the lumbar lordosis and a congenital abnormality of the lower lumbar spine, possibly associated with congenital syphilis. 2) Diffuse paravertebral muscular spasm. 3) Past history of congenital syphilis with residual cataracts, ocular damage and right nerve deafness" and "1.) Degen-

---

1. The "Department of Health, Education, and Welfare" was redesignated the "Department of Health and Human Services" pursuant to P.L. 96–88 effective on May 4, 1980, when the education functions of the Department were transferred to the new Department of Education.

erative joint disease of the cervical spine with some narrowing of the 5th and 6th interspaces and limitation of neck movement. 2.) Old menisectomy of the right knee. 3.) Congenital syphilis leading to interstitial keratitis and deafness in right ear." These conditions cause her exertional and non-exertional limitations.

2. Claimant is 46 years of age, has a limited education and a sporadic work experience history in the last 15 years.

3. Claimant is not now engaged in substantial gainful work activity and has not been since August 25, 1976, the date she filed her application for supplemental security income benefits.

4. Claimant's testimony was in pertinent parts, contradicting to the medical report evidence, her subjective complaints were not credible.

5. Claimant has the residual functional capacity to perform work-related functions except for work involving prolonged walking or standing, bending, lifting, stooping, or lifting of weights of more than 20 pounds.

6. Claimant is unable to perform her past relevant work as a jewelry concessionaire or saleslady.

7. Considering the exertional limitations of claimant, she has the residual functional capacity for at least sedentary work, as defined in Regulation 416.-910.

8. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

9. Based on claimant's exertional limitations, only Regulation 416.913, Rules 201.23 and 201.18, Table No. 1, Appendix 2, SubPart I, Regulations No. 16, direct a conclusion that claimant is not disabled.

10. Although claimant does have some non-exertional limitations caused by eye and ear defects there is no substantial evidence that they either singly or in their combination affect her residual functional capacity for sedentary work and therefore, considering that capacity within the framework of the above rules, the claimant is not disabled.

On November 9, 1979, the Appeals Council approved the decision. The decision of the ALJ, therefore, stands as the "final decision" of the Secretary. Plaintiff has once again appealed to this court and the defendant has filed a motion for summary judgment.

■ The standard of review in a case such as this is limited. It is established that the findings of the Secretary, if supported by substantial evidence, are conclusive. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Markham v. Califano*, 601 F.2d 533 (10th Cir. 1979); *Bradley v. Califano*, 573 F.2d 28 (10th Cir. 1978); *Cline v. Califano*, No. 78–4166, (D.Kan., 8/31/79, unpublished). Substantial evidence is "... more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales, supra*, 402 U.S. at 401, 91 S.Ct. at 1427, *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

The facts in this case reveal that plaintiff was born in 1932 and has a tenth grade education. She has not worked in some twenty years although she tried to do some summer work nine or ten years ago without success. Her past employment was selling and engraving jewelry at carnivals and fairs.

At the hearing before the ALJ, plaintiff testified that her disability was arthritis in both knees, hips, hands, ankles, and her back. She further testified to pain in the neck and back, swelling in the knees, inability to bend or stand for very long and an inability to lift her left arm. She also said she had diagnosed congenital syphillis and that as a result she was almost blind until she was ten years old and is now extremely nearsighted as well as deaf in the right ear. She further stated she has chronic bronchitis.

The medical evidence consisted of the reports of four doctors and was conflicting. Dr. Dean Bray, Ms. Walker's treating physician, concluded that she was disabled due to advanced degenerative arthritis. The other reports contradicted this finding but found that Ms. Walker suffered other impairments. Based on the conflicting medical evidence that was presented, the ALJ reached the conclusions set out in ¶ 1 of his findings, *supra*.

This case is to be decided under the new regulatory "medical vocational" guidelines which became effective on February 29, 1979. See 20 C.F.R. §§ 416.901–.985. The plaintiff has not attacked the validity of the new regulations nor their application to this case.[2] The new regulations were adopted "to consolidate and elaborate upon long standing medical-vocational evaluation policies for adjudicating disability claims in which an individual's age, education, and work experience must be considered in addition to the medical condition." 43 Fed. Reg. 55,349 (1978). The regulations define various factors to be considered in determining whether a claimant is under a disability. 20 C.F.R. §§ 416.905–.912. In addition, the new regulations direct a finding of disability or no disability where the findings of fact in a particular case coincide with the criteria established in the rules and tables of Subpart I, Appendix 2. 20 C.F.R. § 416.903.

In order to determine whether a disability claim will be allowed, the regulations set forth a "sequential evaluation" to be followed. 20 C.F.R. § 416.903. Once a determination that an individual is or is not disabled is made at any step, then evaluation under a sequential step shall be unnecessary." 20 C.F.R. § 416.903(a). The first step concerns whether the individual is currently engaging in substantial gainful activity. 20 C.F.R. § 416.903(b). If it is found that he is, then the claim is denied without proceeding to the other steps in the sequence. If he is not, then the consideration turns to whether the individual has any "severe impairments." 20 C.F.R. § 416.903(c). If he does not, the claim is denied. If a severe impairment is present, then the third inquiry concerns whether the individual has any impairments which meet or equal those listed in Part A of Appendix 1 to Subpart I. 20 C.F.R. § 416.903(d). If he does, then the claim is approved. If the severe impairment does not equal those listed, then the fourth inquiry considers whether the impairment will prevent past relevant work. 20 C.F.R. § 416.903(e). If the impairment does not prevent the individual from returning to his past work, then the claim is denied. If it does, then the last inquiry concerns whether the impairment prevents other work. 20 C.F.R. § 416.903(f). If an individual can perform other work, then the claim is denied. If he cannot, then the claim is allowed. Evaluation for purposes of the fifth step requires an assessment of vocational factors such as age, education, and work experience. See 20 C.F.R. §§ 416.904–.913.

In the instant case, the ALJ proceeded to the last inquiry. The ALJ found that the plaintiff had severe impairments and could not return to her former work. The ALJ then identified and applied the various factors considered relevant for evaluation under the regulations of Appendix 2, informally known as the "vocational grid", in which tables based on levels of a claimant's residual functional capacity direct a finding of "disabled" or "not disabled". The ALJ found that the claimant retained the residual capacity for sedentary work. See 20 C.F.R. § 416.910(b). It was also determined that Ms. Walker was a younger individual (ages 45 to 49) and has a limited education. See 20 C.F.R. §§ 416.906(b) and .906(d). Further, the ALJ determined that in view of the claimant's age and residual functional capacity, the issue of transferability of work skills was not material. See 20 C.F.R. § 416.911(e). The ALJ went on to find that the claimant had certain non-exertional limitations caused by eye and ear defects but that there was no substantial evidence that

2. The validity of these regulations has been upheld in *Phillips v. Harris*, 488 F.Supp. 1161 (W.D.Vir.1980) and *Burroughs v. Secretary of HEW*, Civ. No. 79–10253 (E.D.Mich. 2/21/80).

these impairments affected her residual capacity for sedentary work. See 20 C.F.R. § 416.905(d).

The plaintiff now contends her claims were improperly considered. She claims that the ALJ failed to fully consider the non-exertional limitations that she had. Further, she claims that a vocational expert should have testified in her case. The Secretary contends that the ALJ did adequately consider the non-exertional impairments and found that they did not affect her ability to do sedentary work. In addition, the Secretary contends that these regulations are based on a wealth of information available about jobs existing in the national economy and that testimony by a vocational expert providing the same information is not necessary.

The application of the new regulations have been a source of concern to the several courts that have made decisions under them. See *Phillips, supra*, 488 F.Supp. at 1165; *Halsted v. Harris*, 489 F.Supp. 521 (1980). The court in *Phillips* noted that under the new regulations there was a tendency of administrative law judges to "disregard specific facts of an individual case while overemphasizing the mechanical formulations of the Appendix II criteria." This court shares that concern. The mechanical application of tables and graphs to human lives may on the face seem cold and impersonal; however, this court is also in agreement with the court in *Phillips* that these new methods of evaluation are "theoretically" better than the past imprecise regulatory scheme.

In *Phillips*, the court had two cases under consideration and it held in both cases that the ALJ had erred in finding that the new regulations required a finding of not disabled because the consideration actually given by the ALJ to a non-exertional limitation was inadequate. In the instant case, the plaintiff also suffers from some non-exertional limitations. The ALJ found that the plaintiff was deaf in her right ear and that she had interstitial keratitis. When non-exertional limitations are present, the regulations provide that the rules of Appendix 2 cannot be applied so as to require a finding of not disabled. See Rule 200.00(e) of Appendix 2 to Subpart I. However, the rules do provide an overall structure for evaluation of those cases in which the judgment as to each factor does not coincide with that of any specific rule. The regulations do provide in Rule 200.00(e)(2) of Appendix 2 to Subpart I:

> [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in §§ 404.1505–404.1511, which will provide insight into the adjudicative weight to be accorded each factor.

Thus, the ALJ found that these non-exertional limitations did not prevent the plaintiff from doing sedentary work and that Rules 201.18 and 201.23 of Appendix 2 to Subpart I required a finding of not disabled. Before we review this finding, it is necessary to set out the order of proof established in Social Security disability cases.

The claimant in these cases have the burden to establish the inability to perform his previous work. Once this is shown, the burden shifts to the Secretary to demonstrate that there is work in the national economy which the claimant can perform. If the Secretary meets this burden, then the claimant must demonstrate by

substantial evidence that the disability which he suffers prevents him from performing the other types of gainful employment which the Secretary has demonstrated to be available. *Sanchez v. Califano*, No. 77–1900 (10th Cir., 1/11/79, unpublished).

In the past, evidence of other jobs in the national economy which the claimant is capable of performing was usually provided by the testimony of a vocational expert. *Wilson v. Califano*, 617 F.2d 1050 (4th Cir. 1980); *Salas v. Califano*, 612 F.2d 480 (10th Cir. 1979); *Laffoon v. Califano*, 558 F.2d 253 (5th Cir. 1977); *Crowe v. Harris*, 489 F.Supp. 683 (E.D.Tenn.1980); *Phillips, supra; Boeh v. Califano*, No. 77–2159 (D. Kan., 8/15/78, unpublished). The Secretary now relies on the new regulations to meet her burden and takes administrative notice of the existence of jobs in the national economy with various exertional requirements pursuant to Rule 200.00(b) of Appendix 2 to Subpart I. Thus the question arises as to what the effect of the new regulations is on the requirement for testimony from a vocational expert. This issue has been considered by several courts with differing results. In *Jones v. Harris*, Civ. No. 3–79–487 (E.D.Tenn., 3/18/80), no testimony from a vocational expert was presented and the court saw no problem in the Secretary relying on administrative notice that jobs existed in the national economy for the claimant as provided in the new regulations. In *Halsted, supra*, the court stated the problem this way: "Whether or not this new grid system of placing a claimant in various categories, and then concluding the availability of residual skills, which system is based upon a lengthy and extensive study, would replace the use of the vocational counselor, is of some concern to this Court." The court went on to approve the use of the regulations for that case in place of the testimony of a vocational expert but did not definitely answer the issue or their concern. Several other courts have allowed reliance on the administrative regulations but have also heard the testimony of a vocational expert. *Fain v. Harris*, 481 F.Supp. 30 (D.Md.1979); *Hicks v. Califano*, 600 F.2d 1048 (4th Cir. 1979). In contrast,

the court in *Phillips, supra*, was critical of the Secretary's reliance on the administrative regulations. The court stated:

> The Secretary has used this mechanical formula to avoid the requirements of well established case law; instead of going forward with the burden of proof as required, they have rested on the Administrative Law Judge's application of Appendix II. This practice is deficient. In the instant cases, the Law Judge failed to identify any specific jobs in which the plaintiffs could be expected to perform. No vocational expert testified. No attempt was made to identify the skills necessary in any of the alternate work roles that were considered to be within plaintiffs' capacity. No attempt was made to assess the limitations imposed by plaintiffs' specific impairments against the requirements of any particular job. In short, it is obvious the Secretary has failed to discharge the burden of going forward with evidence of capacity for a specific alternate job in the national economy and proof of transferable skills. 488 F.Supp. at 1167.

However, the court went on to say that its opinion should not be read so broadly as to require testimony of vocational experts when the sequential evaluation of the new regulations reaches step five.

This court finds the analysis and reasoning of *Phillips* to be very persuasive and applicable to the instant case. We are in agreement with the Secretary that a vocational expert is not necessary when the factors of a claimant's residual functional capacity, age, education and work experience coincide with the criteria of a rule under the new regulations and the rule directs a conclusion as to whether the individual is or is not disabled. However, this court feels that testimony of a vocational expert is necessary in a case where a claimant has both exertional and non-exertional impairments that may prevent the full range of sedentary work available. Obviously, in the instant case, the ALJ found some very restrictive non-exertional limitations. Without the testimony of a vocation-

al expert or without any other descriptions as to specific sedentary jobs claimant could perform, there is no substantial evidence for the ALJ's finding that this particular plaintiff could perform a significant range of sedentary work. The record is devoid of any evidence that the ALJ could have relied upon in reaching his conclusion. We simply do not believe that the Secretary has met her burden. As the court in *Phillips* concluded:

> [I]t appears the Secretary has attempted to discharge the burden of going forward with the evidence in these cases without adducing any new evidence relative to the crucial issue. No reasoning, argument or rationale has been presented to justify the Secretary's apparent assertion that the new regulations are structured in such a manner as to permit the Secretary to discharge his burden by a different consideration of the same factors and issues that have previously been held to require evaluation by an expert. *No reasoning, argument, or rationale has been presented to remotely support the contention that the new regulations have been organized in such a manner as to suddenly vest the administrative law judges with the vocational expertise that numerous cases have held they do not possess.* In close cases such as those at hand, it cannot be said that the final decision of the Secretary is supported by "substantial evidence" *when that decision is based, in essence, on nothing more than speculation by the administrative law judge.* 488 F.Supp. at 1168. (emphasis added).

We would emphasize that this decision does not mandate the testimony of a vocational expert in all cases where non-exertional limitations are present. However, when significant non-exertional limitations exist, as in the present case, it is necessary for the Secretary to present vocational testimony as to the sedentary jobs that claimant could perform. This court feels that the regulations are a valuable tool for the Secretary but that "... in cases of prima facie disability, the advent of the new medical vocational guidelines does not present sufficient justification for departure from the well reasoned teachings and requirements of [previous] cases ..." *Phillips, supra,* 488 F.Supp. at 1169.

In conclusion, we believe that plaintiff has developed a prima facie case of disability which has not been overcome by the Secretary. However, we do not believe that the record is adequate to prove plaintiff's ultimate entitlement to benefits. Therefore, we shall deny defendant's motion for summary judgment and remand to the Secretary for proceedings consistent with this opinion.

IT IS SO ORDERED.