**Kenneth PRYOR, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

No. 79–0087–CV–W–3.

United States District Court, W.D. Missouri, W.D.

May 16, 1983.

Grabriel Domjan, Legal Aid of Western Missouri, Harrisonville, Mo., for plaintiff.

Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

Plaintiff brings this action for review of a final decision by the Secretary of Health and Human Services pursuant to 42 U.S.C. § 402(a). The Secretary denied plaintiff's application for disability insurance benefits but found that plaintiff was under a disability as necessary to qualify for supplemental security income as of October 31, 1978. The action pends on cross-motions for summary judgment. For the reasons discussed below, the Court affirms the decision of the Secretary.

### Procedural History

On June 13, 1977, plaintiff filed an application to establish a period of disability and to obtain disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.[1] The disabling conditions were emphysema and arthritis. Plaintiff filed an application on June 29, 1977 seeking supplemental income disability benefits as provided in Title XVI of the Act, 42 U.S.C. § 1381 et seq. Both applications were considered and reconsidered by the Social Security Administration and denied.

---

1. The plaintiff had filed an earlier application for disability insurance benefits on May 27, 1975, alleging he was disabled from May 19, 1975, due to emphysema. The application was denied through reconsideration level and the notice of denial of the claim was forwarded to plaintiff on October 14, 1975. Plaintiff did not request timely appeal and the reconsideration decision became the final decision of the Secretary. The ALJ in the present case found there was not sufficient evidence to warrant the reopening of this prior decision and the decision not to reopen is not appealable to the district court.

On May 5, 1978, at plaintiff's request, a hearing was held on plaintiff's applications. Plaintiff was present and was represented by a paralegal from the office of Legal Aid of Western Missouri. The administrative law judge (ALJ) rendered a decision unfavorable to plaintiff, finding that plaintiff was not under a disability, as defined in the Act, at any time when he met the earnings requirements. He found that plaintiff was not entitled to supplemental security income or to disability insurance benefits under section 1614(a)(3) and sections 216(i) and 223 respectively. The Appeals Council affirmed the hearing decision on November 30, 1978.

Plaintiff sought judicial review of that decision with this Court. On February 26, 1980, this Court remanded the case to the Secretary for the taking of additional evidence and the making of additional findings regarding the indications contained in the new evidence. In accordance with the Order, the Appeals Council of the Social Security Administration vacated its denial of plaintiff's request for review of the ALJ's decision and remanded the cause to the ALJ for further proceedings. A supplemental hearing was held on November 14, 1980. At the hearing, plaintiff and his wife testified and plaintiff was represented by counsel. Additional medical evidence was also received. The ALJ rendered its recommended decision on January 22, 1981. He found that plaintiff was not under a disability prior to September 30, 1976, and thus was not entitled to a period of disability or to disability insurance benefits under sections 216(i) and 223 of the Act. He further found that plaintiff was under a disability for supplemental security income purposes as defined in section 1614(a)(3) of the Act, commencing on October 31, 1978. The Appeals Council adopted the recommended decision on April 20, 1981, and it is now the final decision of the Secretary and subject to this Court's review.

## Discussion and Standard of Review

In order to be eligible for disability insurance benefits, a claimant must have 20 quarters of coverage in the 40-quarter period ending with the first quarter of disability, often called the special earnings requirement. The ALJ determined that plaintiff had last met the special earnings requirement on September 30, 1976. The plaintiff has not disputed this date. Accordingly, for plaintiff to be entitled to disability insurance benefits, he must establish that he was disabled within the meaning of the Act on or before September 30, 1976. 42 U.S.C. §§ 416(i)(3) and 423(c)(1)(B). The ALJ found that plaintiff was not disabled as of September 30, 1976.

It is not necessary to meet the special earnings requirements in order to be eligible for supplemental security income. The ALJ found that plaintiff was disabled beginning on October 31, 1978, and was eligible for supplemental security income as of that date.

Under the Social Security Act, judicial review of the Secretary's decision is limited to a determination of whether there is substantial evidence to support the decision. 42 U.S.C. § 405(g). Substantial evidence has been defined by the Supreme Court as "what a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). See also, *Celebrezze v. Bolas,* 316 F.2d 498, 501 (8th Cir.1963).

In determining whether the Secretary's findings are supported by substantial evidence, this Court is required to consider the entire record. The Secretary's findings and reasonable inferences drawn from them are conclusive if they are supported by substantial evidence. *Klug v. Weinberger,* 514 F.2d 423 (8th Cir.1975); *Fitzsimmons v. Mathews,* 491 F.Supp. 423, 425 (W.D.Mo. 1980).

Accordingly, the question before this court is whether there is substantial evidence to support the ALJ's determination that plaintiff was not disabled on or before September 30, 1976. The court will review the records and transcript of both hearings.

### Statement of Facts

Plaintiff was born on April 25, 1932. He alleges in his application for benefits that he became unable to work in March of 1975, at the age of 42, because of emphysema and arthritis.

Plaintiff's past work included the following: From 1972 to 1975, plaintiff owned a truck which he leased and drove. In 1973, he worked as an automotive mechanic maintaining cars and trucks including doing tune-ups, major overhauls, and other related works. In 1972, he worked as a truck driver and general maintenance man. He did carpentry work including remodeling homes, working on sidings and roofs, and building porches in 1971. The year before, he rebuilt fork lifts and hydraulic equipment. Between 1967 and 1968 he worked in the lead industry maintaining furnaces and open fires for lead dipping and lead pumping equipment. In 1966 he rebuilt printing presses and worked as a machinist and general repairman on presses. Plaintiff also has experience doing general farm work and as an airplane mechanic. He has worked for a rug company where he washed, cleaned, repaired and dried rugs. Plaintiff also indicated that he had experience in television and radio repair. It is unclear when he performed this electronic repair work outside of the military but he maintained a workroom in his home where he continued the work as a hobby until he claims his physical impairments prevented him from this electronic work.

### Medical Evidence:

The plaintiff was examined by Emery R. Calovich, M.D., a specialist in Internal Medicine, on July 11, 1975. Plaintiff related a history of work as a heavy mechanical equipment operator and a truck driver ending one and one-half months prior to the examination. He stated he had stopped working due to cut-backs on the work force. He was presently being treated at Jackson County Hospital and the Veterans Administration (V.A.) Hospital in Kansas City.

At the time of Dr. Calovich's examination, plaintiff's chief complaint was shortness of breath which had become worse in the past one or two months. Plaintiff told the doctor that it was primarily noted on exertion but occasionally occurred while sitting. His exercise capacity walking on level ground and taking his time was unlimited and he could negotiate one and one-half blocks on an incline. He had no orthopnea (difficult or labored breathing when not upright) and his cough had disappeared during the two months since he had stopped smoking. Chest X-rays revealed chronic pulmonary obstructive disease and suggested bullous emphysema (emphysema covering a patch of lung greater than one centimeter in diameter) of the right lung. Plaintiff also complained of a stiffness and aching in the midline lumbar spine area and stated that occasionally bending, stooping, squatting or lifting bothered him. Within the past four weeks he had begun having some aching in the knees and shoulder joints. The doctor found no abnormalities of knee or shoulder joints.

Dr. Calovich concluded that plaintiff had chronic pulmonary obstructive disease with a strong possibility of some bullous emphysema. He also believed plaintiff had arthritis involving the entire back and spine.

Plaintiff's eyes were examined and found normal and his heart was basically normal except slight peaking of the P waves in II, III and AVF. Dr. Calovich concluded:

"As far as employability is concerned, I think this man should be able to carry out all types of work, particularly if the work is not of a manual or heavy labor type such as digging ditches and lifting weights for an eight hour period. I think otherwise it would be really no limitation. I think the problem of lifting heavy objects would not only encroach on his breathing but probably would aggravate his back. Otherwise, I see no reason why he could not continue working at any other type of job that might be available to him." (Tr. 192).

Plaintiff was treated at the V.A. Hospital in Kansas City, Missouri from May of 1975 to May 1977, for various ailments including treatments for emphysema on May 10 and May 16, 1975, sores in his mouth and on his

shoulders from June 15, 1975 to May 24, 1976, stomach upset on May 25, 1975, arthritis on June 15, 1975, and bronchitis on May 24, 1976 and May 10, 1977. On September 2, 1976, plaintiff was examined at the V.A. Hospital for the purposes of evaluating disability. His complaints included bronchitis, emphysema, arthritis, pain in right upper lung and under rib cage, dizziness, inability to breathe through his nose for any length of time, sores in his mouth, and bad eyes.

Examination of the cardiovascular system revealed that his heart sounds were regular in rhythm with no murmurs, but heart sounds were slightly distant over the base of the heart.

On examination, plaintiff's hearing was normal. Chest X-rays revealed large multiple bullous emphsematous lung at the right upper segment but was otherwise not remarkable. X-rays of the lumbosacral spine revealed a minimal to moderate degree of degenerative osteoarthritis with anterior spur formation (arthritic spurs on the ends of the vertebrae). Slight degenerative osteoarthritis of the feet and ankles was also disclosed by X-rays. Pulmonary function studies revealed mild obstructive and borderline restrictive defect. Plaintiff had slight crepitus (slight grating noises of the elbows) on flexion and extension of both elbows and mild scoliosis (slight deviation of the spine) of the thoraco-lumbar spine, but otherwise no abnormality of the joints. He had normal mobility of the spine and unrestricted straight leg raising.

The final diagnoses by the V.A. Hospital were mild chronic obstructive lung disease, bullous emphysema of the right upper lobe, degenerative osteoarthritis of the lumbosacral spine, and mild degenerative osteoarthritis of both ankles.

W.A. Slentz, M.D., a specialist in internal medicine and diagnosis, examined plaintiff on August 10, 1977 for his complaints of fatigue, shortness of breath, and widespread aches and pains. Plaintiff complained of back pain especially when he had to work or get up in the morning although he stated once he was up and around for awhile it did not cause him much difficulty.

He also complained that his legs and arms ached at times. Examination revealed that plaintiff had no limitations to back motion and had a good range of motion in all directions. X-rays of the lumbosacral spine showed excellent alignment and no abnormalities except minimal lipping in the lumbar area. An eye examination, ear, nose, and throat examination, and an EKG were all normal. He had good range of motion of all joints, normal reflexes and normal pulses. His lung fields were clear and he appeared to move air in and out of his lungs in an adequate fashion. A chest X-ray showed some markings on the right mid and upper lung fields, suggestive of a cystic change consistent with emphysema. Those changes, however, were not very marked.

Dr. Slentz' diagnoses were chronic obstructive pulmonary disease and non-specific arthralgias (pain in the joints). On observation, the doctor stated that plaintiff seemed to grunt and groan and seemed to exaggerate any discomfitures that he may have had. Dr. Slentz felt plaintiff was not as chronically ill as he would like one to think he is and that he could do many different gainful tasks, though he perhaps could not do heavy manual labor.

Pulmonary function studies performed at St. Mary's Hospital in Kansas City on August 12, 1977, revealed a moderate obstructive defect mostly at the small airways which was not improved following the use of bronchodilator. It was noted that plaintiff was not performing the test well and suggested the test be retaken.

Plaintiff's own doctor, James E. Gracheck, sent a report dated August 30, 1977. Dr. Gracheck stated that he first saw plaintiff on November 11, 1975 and last saw him on August 1, 1977 and that he felt that plaintiff had bullous emphysema. His decision, he reported, was based on tests performed at the V.A. Hospital. His prognosis regarding work activity was poor. In a letter dated October 24, 1977, Dr. Gracheck stated:

"Due to my patient's financial status, I have been unable to do private testing

and therefore have very little medical proof of his disability."

He felt, however, that there had been a substantial rate of deterioration in plaintiff's condition.

Plaintiff was examined by Richard M. Childs, M.D., a psychiatrist, on June 5 and June 7, 1978. Dr. Childs' conclusions were:

"The psychiatric examination reveals a mild degree of reactive depression without severe psychiatric symptoms. This depression would alone not be considered disabling. It would tend to aggravate any respiratory problem which is present and tend to cause him to overreact to it. Any significant degree of disability would have to be principally on the basis of actual physical problems."

At the supplemental hearing on November 14, 1980, the only additional medical report submitted by plaintiff was a report from the Veterans Administration Medical Center, Kansas City, Missouri. This report covered plaintiff's hospitalization there from October 31, 1978, to November 29, 1978. Plaintiff's chief complaints at that time were of blurring vision as if a veil was pulled over his eyes, associated with loss of vision in the right half of the visual field, left-sided headaches, dizziness, and lightning-bolt flashes in his right eye. These symptoms had been going on approximately five years, but had become worse in the past two or three months. The episodes occurred two to three times per month and lasted for an hour to a day, occasionally associated with nausea. Plaintiff also gave a history of having migraine headaches for years and associated difficulty in expressing himself. Chest X-rays revealed bolus [sic] emphysema of the right lung. No acute process was seen. Pulmonary function studies showed a moderate obstructive lung disease with mildly reduced vital capacity and moderate restriction in forced expiratory volume and forced vital capacity. Plaintiff complained of stiffness and cramping in his right hand. An EGM showed moderately severe carpal tunnel syndrome (pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the

elbow on the right). After an ophthalmology consultation, the consulting physician concluded that plaintiff had chronic blepharitis (inflammation of the eyelid).

In summary, during this hospitalization plaintiff was found to have moderate obstructive lung disease, bilateral carpal tunnel syndrome moderately severe on the right, ischemic migraine headaches, chronic blepharitis, and somatic (pertaining to the body wall in contrast to the organs) dysfunction of the cervical area.

*Plaintiff's Testimony:*

At the first hearing on May 5, 1978, plaintiff testified that he was 5'–11–½" tall, and weighed 163 pounds. Plaintiff did not get past the second grade in regular elementary school and attended a special school for children with learning disabilities. Plaintiff did not attend high school but took a G.E.D. test while in the military service and "passed it as an Eighth Grade." Plaintiff served in the Army from 1952 to 1954 and saw front-line combat in Korea. Plaintiff testified that he suffered an eye injury in Korea which resulted in total blindness for one or two months. Plaintiff was hospitalized in Korea, regained his sight and was sent back into action. Plaintiff applied for a service-connected disability for a detached retina, but states that he was turned down because his records were lost. Regarding his vision impairment, plaintiff testified that his glasses "correct it pretty good." Plaintiff testified that he also had lung problems in the Army in Korea diagnosed as bronchitis.

Plaintiff subsequently served in the United States Coast Guard from 1956 to 1960. While serving in the Coast Guard, he was hospitalized for surgical repair of a double inguinal hernia and for pneumonia.

Plaintiff testified that he had vocation experience in the Coast Guard as engineer, welder and carpenter. Plaintiff has had experience doing general farm labor, cleaning and repairing rugs, and driving a truck. Plaintiff's last employment was as owner-operator of an eighteen wheel, over-the-road tractor-trailer, which he leased to a trucking company. Plaintiff stated that he

quit his job because of violence from the striking Teamsters and because of difficulty with the company for which he worked. He believed that his physical problems contributed to his problems with the people at work.

Plaintiff complained of occasional vision problems, seeing streaks of lightening, and getting dizzy. He testified that doctors at the V.A. Hospital told him he had emphysema and chronic bronchitis. Upon learning of this illness, plaintiff quit smoking. He had smoked about one and one-half packs of cigarettes a day for the preceding twenty-five years. Plaintiff testified that he is unable to take heavy work because he cannot stand long hours and dust; that any dust or fumes cause him to become short of breath or pass out. He admitted that he drives a car to take his wife to and from work every day and that she works six miles away. He stated, however, that he is unable to drive a truck because of his breathing impairment and the possibility that he might pass out. Plaintiff testified that he is "good for about two hours a day of doing much of anything" before he starts losing his strength.

Plaintiff also complained of problems with his hands; that he has no strength in his grip and sometimes is able to hold a cup of coffee only a few minutes before having to drop it. He stated that he is unable to do any bending, that he has pains in his shoulders and back, and that he suffers from headaches so severe he is forced to lie down. Plaintiff testified that he suffered a back injury for which he received workmen's compensation and still has backaches because of it. He also complained of swelling in his hands and arms.

Plaintiff stated that at the time of the hearing he was occupied with house cleaning, washing the dishes, and taking care of his two children, then aged eleven and six years. He testified that these housekeeping tasks must be spread throughout the day, so that he can do them without feeling too bad. He stated that washing clothes gives him problems with his arms cramping. Plaintiff takes a nap from noon until two o'clock, has no social activities because he is too tired and goes to bed somewhere around ten to twelve p.m. Plaintiff has trouble sleeping due to his lung problem. The year before, 1977, he had a garden but he didn't feel he could manage a garden any more.

At the supplemental hearing on November 14, 1980, plaintiff again testified. He stated that he was last hospitalized in 1978 at the V.A. Hospital. The purpose of the hospital visit was to discover why he had blind spells and migraines. He stated that he had been having migraines since he was three years' old, but that they had become worse in the past four to five years. The headache pain was much greater in 1980 than it had been when he was working. The migraines last from one hour to one week and occur one to four times a month. Plaintiff testified that the hospital personnel told him that cardiovascular problems and high blood pressure caused the migraines. Often the headaches were preceded by a vision problem, a loss of half of his field of vision, blackouts, and difficulty speaking. Noise and light bothered him when he had a headache. Plaintiff also stated that the headaches had changed since he had been taking a different drug, Inderal. He takes Valium and Inderal for the headaches.

Plaintiff also claimed to have breathing problems. He stated his emphysema is incurable and getting worse. The pain from emphysema comes and goes. He stated that it occurs when he exerts himself physically and when he lies down to sleep. He can walk upstairs but has to rest afterwards.

Plaintiff testified that he has degenerative arthritis in every joint. He has pain in his hands, elbows and shoulder blades. He takes aspirin and Butzolidin for the pain. He also has pain in his back.

According to plaintiff's testimony, his various pains cause trouble when he tries to sleep.

Plaintiff still drives a car but only when he must. He does not believe he will be able to pass the vision test next time. He insisted that he would not be allowed to

drive a truck anymore because of his lung problems and the black-outs which occurred when he was driving, once in 1980 and once in 1975.

Plaintiff said he does some housework and gets the children up for school. He stated that he has pain sometimes while sitting and cannot read for long before his eyes get blurry. His doctor told him not to go outside in cold weather and told him that he was not able to take further vocational training due to his ailments.

When asked specifically about the status of his impairments prior to September 30, 1976, plaintiff stated that he was having vision problems and light flashes for about one to two years before he quit work. He also had headaches before 1976. He stated that he was continuously cold, coughed and was fatigued prior to resigning. He also had arthritis and had since his days in Korea.

Plaintiff's wife testified at the supplemental hearing and corroborated her husband's testimony.

### Administrative Law Judge's Findings

Based on the above evidence, the ALJ made the following findings:

1. The claimant filed an application for disability insurance benefits and supplemental security income on June 13, 1977, alleging disability from March 1975.

2. The claimant met the special earnings requirement of the Act in March 1975, the date that he stated that he became unable to work, and continued to meet them through September 30, 1976.

3. The claimant did not have a severe impairment which prevented him from engaging in all basic work-related functions for any continuous peri-

od beginning in or before September 30, 1976, which lasted for at least twelve months.

4. The medical evidence establishes that as of October 31, 1978, the claimant had moderate obstructive lung disease, bilateral carpal tunnel syndrome, moderately severe on the right, ischemic migraine headaches, chronic blepharitis, somatic dysfunction of the cervical area, history of reactive depression, nonspecific arthalgias [sic] and degenerative osteoarthritis. Beginning on October 31, 1978, the claimant had a combination of impairments which were severe and as a result of these impairments, it has been impossible for the claimant to engage in any type of substantial gainful activity since October 31, 1978. These conditions have persisted through the date of this decision.

5. The claimant's allegations of headaches, lightning flashes in his eyes, pain, blackouts, loss of grip in his hands, loss of vision, difficulty in speaking and lethargy are supported by the record beginning on October 31, 1978, and are therefore credible on and after this date.

6. The evidence of record establishes that the claimant has been precluded from engaging in any and all substantial gainful activity and is under a "disability" within the meaning of the Social Security Act, as amended; that such disability commenced on October 31, 1978, but not prior thereto, and continued through the date of this decision.

### Analysis

 Disability is defined in Title II [2] of the Act. The definition can be distilled into

2. Title II defines disability as the:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months. 223(d)(1)(A): 42 U.S.C. § 423(d)(1)(A)

an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

three elements. One, the claimant must suffer from a medically determinable physical or mental impairment. Two, the impairment must have lasted or be shown to last at least for twelve months, or result in death. Three, the impairment must prevent the claimant from engaging in any substantial gainful employment for the same period. *See Beasley v. Califano,* 608 F.2d 1162, 1164 (8th Cir.1979); *Timmerman v. Weinberger,* 510 F.2d 439, 442 (8th Cir. 1975). The claimant has the burden, in the first instance, of establishing his disability status, *Russell v. Secretary of HEW,* 540 F.2d 353, 356 (8th Cir.1976); *Fitzsimmons v. Mathews,* 491 F.Supp. at 425; *Halsted v. Harris,* 489 F.Supp. 521, 525–26 (E.D.Mo. 1980); and that his disability arose while he was insured by the Act, 42 U.S.C. §§ 416(i)(3)(B) and 423(c)(1)(B). Once the claimant has established that he is disabled and can not return to his former employer then the burden shifts to the Secretary to show by substantial evidence that jobs exist in the national economy that the claimant can perform. *Simonson v. Schweiker,* 699 F.2d 426 (8th Cir.1983); *McDonald v. Schweiker,* 698 F.2d 361, 364 (8th Cir.1983); *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982).

In the case presently before the Court, the ALJ found that plaintiff was precluded from engaging in any and all substantial gainful activity and was under a disability commencing on October 31, 1978, but found that plaintiff did not have a severe impairment which prevented him from engaging in all basic work related functions before that date.

The regulations set out the steps to be used in evaluating disability. The regulations state:

(a) ... We follow a set order to determine whether you are disabled. We review any current work activity, the severity of your impairment(s), your residual functional capacity and your age, education, and work experience. If we can find that you are disabled or not disabled at any point in the review, we do not review further.

(b) If you are working. If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.

(c) You must have a severe impairment. If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520

The terms "severe impairment" and "basic work activities" are defined in the regulations.

(a) Non-severe impairment. An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities.

(b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriate to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521

The Eighth Circuit has approved these regulations and recognized that "if a severe impairment is not found, the claimant must be found not disabled." *McCoy v. Schweiker,* 683 F.2d 1138, 1142 (8th Cir.1982).

---

age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy .... 223(d)(2)(A); 42 U.S.C. § 423(d)(2)(A).

■ The question before this Court is whether there is substantial evidence to support the ALJ's finding of no severe impairment. Plaintiff argues first that the ALJ failed to make a specific finding that the claimant could return to his former work activity. Under the regulations, however, such a specific finding is unnecessary if the ALJ finds no severe impairment. As discussed above, the ALJ can end his analysis if he finds no disability at any step. The specific determination of whether the impairment prevents a claimant from doing past relevant work, contained in 20 C.F.R. § 404.1520(e), is a later step than the finding of no disability based on no severe impairment.

Although it was not necessary for the ALJ to make a specific finding that plaintiff could return to his former work, by finding that he did not have a severe impairment which prevented him from engaging in all basic work related functions, the ALJ, in effect, found that there was nothing preventing plaintiff from returning to his former work activity.[3]

■ The general rule is that the applicant for disability has the burden of establishing his claim. *Timmerman v. Weinberger,* 510 F.2d 439, 443 (8th Cir.1975). The cases, however, have broken this burden into two parts. The initial burden is on the claimant to show that he suffers from an impairment which prevents him from engaging in his former work activity. Once he proves this, the burden shifts to the secretary to prove that there is some other type of substantial gainful activity which the claimant could perform. *Brinker v. Weinberger,* 522 F.2d 13, 17 (8th Cir.1975); *Timmerman v. Weinberger,* 510 F.2d 439, 443 (8th Cir.1975); *Brown v. Harris,* 548 F.Supp. 399 (W.D.Mo.1982).

In finding that plaintiff had no severe impairment which prevented work related functions prior to September 30, 1976, the ALJ indicated that he believed that plaintiff did not meet his burden of proving he could not return to his former work activity prior to that date. With the additional medical evidence relating to plaintiff's condition as of October 31, 1978, the ALJ held that plaintiff did meet the burden of proof and found plaintiff was disabled as of that date.

Plaintiff argues that the ALJ disregarded plaintiff's subjective complaints of disabling pain before September 30, 1976, and impermissibly found that plaintiff's complaints were only credible after October 31, 1978. This Court is well aware that in this circuit the ALJ cannot disregard a claimant's subjective claim of pain just because it is not supported by objective medical evidence. *Simonson v. Schweiker,* 699 F.2d 426 (8th Cir.1983); *McDonald v. Schweiker,* 698 F.2d 361 (8th Cir.1983); *Cole v. Harris,* 641 F.2d 613, 615, 616 (8th Cir.1981).

■ Although the ALJ did not specifically state that the plaintiff's claims of disability were not credible on or before September 30, 1976, that finding can certainly be implied from the finding that after October 31, 1978, the claims were credible. It is the responsibility of the ALJ to determine the credibility of those who testify before him. *Fitzsimmons v. Mathews,* 491 F.Supp. 423, 428 (W.D.Mo.1980), *aff'd,* 647 F.2d 862, 864 (8th Cir.1981). The ALJ is not bound by the testimony of the claimant. *Criswell v. Califano,* 498 F.Supp. 42, 48 (W.D.Mo.1980). The Court believes that there is substantial evidence to support the ALJ's finding regarding credibility. The ALJ had a reasonable basis for discounting

**3.** Plaintiff argues that because of the Interstate Commerce Commission regulations, plaintiff would not be allowed to become a truck driver based on his lung problems. The Court does not believe that former work is limited to the last job held by a claimant. Under 20 C.F.R. § 404.1561, previous work is defined as "usual work of other applicable work." By analogy, in § 404.1565, the regulations state that in determining "work experience," the Administra-

tion will consider work experience within the past fifteen years which lasted long enough for the claimant to learn to do it and was substantial gainful activity. Plaintiff's recent past work experience includes truck and other vehicle maintenance repair as well as carpentry work. Plaintiff also discussed his electronics knowledge and apparently has worked at least on a hobby basis in that area relatively recently.

the credibility of plaintiff's complaints. Although plaintiff's medical problems may have inhibited his activities somewhat, he continued to do many things evidencing a capacity to return to gainful activity. *See, Halsted v. Harris,* 489 F.Supp. 521, 526 (E.D.Mo.1980); *Roark v. Secretary of HEW,* 433 F.Supp. 643, 646 (E.D.Mo.1977), *aff'd,* 564 F.2d 14 (8th Cir.1977). For example, plaintiff complained that he could no longer work as a truck driver because of his vision and lung problems, and yet as late as 1978, three years after the alleged onset of his disability, he still drove twenty-four miles a day taking his wife to and from work. In 1980, he still liked to drive but by then he only drove when it was necessary. In 1977, plaintiff had a garden. Plaintiff's "subjective complaints may be shown to be exaggerated by any inconsistency in claimant's testimony and all other circumstances in the case." *Brand v. Secretary of HEW,* 623 F.2d 523, 526 n. 3 (8th Cir.1980). Dr. Slentz, a specialist in internal medicine and diagnosis, who examined plaintiff in August of 1977, believed plaintiff exaggerated his discomfort and that plaintiff was not as chronically ill as he would like one to think.[4]

Plaintiff contends that there is no evidence that October 31, 1978, is the date plaintiff suddenly became disabled and that because the ALJ found he was disabled based on the same medical conditions which plaintiff had complained of since 1975, that the court should find he was disabled all along. The problem with plaintiff's argument is that the evidence establishes that plaintiff's condition was worsening over time. The plaintiff is correct in that it is unlikely that on October 31, 1978, plaintiff's condition suddenly worsened so as to make him disabled. Indeed, he may have become disabled prior to that time but there is not sufficient evidence to support the claim of disability prior to the doctor's reports of October 31, 1978. The burden is on the plaintiff to provide the proof of his disability.

When plaintiff was admitted to the V.A. Hospital in 1978, the doctor indicated that the vision problem, headaches and dizziness had been occurring for about five years but had become worse in the past two to three months. Plaintiff's arthritic condition was diagnosed as "degenerative osteoarthritis." In other words, his condition of arthritis was progressively deteriorating and in 1978 this condition had deteriorated sufficiently so as to become disabling. The condition was not necessarily as severe in 1976. In his testimony at the hearing, plaintiff indicated that his lung condition had worsened and that the original X-rays in 1975 showed that half of the upper right lung was affected by emphysema but three years later the problem covered the entire lungs.

Plaintiff's own doctor, Dr. Gracheck, stated in October 1977, one year after plaintiff last met the special earnings requirement that he believed there had been a substantial rate of deterioration in plaintiff's condition since his first examination in November 1975.

Plaintiff's activities also showed that his condition was worsening in that over the years he felt more limited in his activities. For example, in 1977, plaintiff had had a garden but in 1978 he did not feel he could handle one. Also, he curtailed his driving over the years. In his testimony at the first hearing, plaintiff indicated that he woke his children up and got them ready for school but in the supplemental hearing plaintiff stated that he often did not get out of bed until 10:00 or 11:00 and sometimes not at all.

The above-listed evidence indicates that plaintiff's condition was worsening and the fact that his condition was so severe in 1978 as to be disabling does not necessarily establish that it was disabling in 1976.

■ For the reasons discussed above, the Court hereby finds that there is substantial evidence in the record to support the Secretary's conclusions that plaintiff was not disabled on or before September 30,

---

4. Plaintiff insisted that he would be unable to return to many of his former jobs because dust, gas, or fumes associated with the work would bother him. None of the medical records, however, indicated that plaintiff should stay away from exposure to these things.

1976, and therefore not entitled to disability insurance benefits, but was disabled on October 30, 1978, and therefore entitled to supplemental security income. Accordingly, it is hereby

ORDERED that the plaintiff's motion for summary judgment is hereby denied. It is further

ORDERED that the defendant's motion for summary judgment is hereby granted and the decision of the Secretary is hereby affirmed.