Esther McDONALD, Appellant,

v.

Richard SCHWEIKER, Secretary of Health and Human Services, Appellee.

No. 82–1741.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1982.

Decided Jan. 26, 1983.

1. The Hon. Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., George W. Proctor, U.S. Atty., E.D. Ark., Chalk S. Mitchell, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Jim O'Hara, Little Rock, Ark., for appellant.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge. ·

Esther McDonald filed an application for social security disability benefits on August 1, 1979,[1] alleging a disability onset date of August 8, 1977. After the Secretary denied this claim twice, McDonald requested a hearing. After a hearing, the administrative law judge (ALJ) recommended that appellant's claim be denied, and his hearing decision was adopted by the Appeals Council as the final administrative decision.

McDonald sought judicial review in the district court. The case was referred to a magistrate, who recommended affirming the decision of the Secretary of Health and Human Services. The district court adopted the magistrate's opinion, holding that no errors of law had been committed at the administrative level, and that substantial evidence on the record as a whole supported

---

**1.** McDonald first applied for disability benefits on April 21, 1978, alleging she had been disabled since August 18, 1977. After her claim was denied initially and on reconsideration, she requested a hearing before an administrative law judge (ALJ). On May 3, 1979, the ALJ dismissed her request for a hearing because it had not been timely filed. McDonald appealed the dismissal to the ALJ and then to the Appeals Council, contending that she had "good cause" for her failure to meet the deadline. On June 26, 1979, the Appeals Council notified appellant that it would not review the dismissal of the hearing request. The August application was the second application she filed.

the Secretary's findings. For reversal McDonald contends that (1) the Secretary's finding that McDonald was capable of "light work" was improperly reached and (2) the Secretary erred in resting his decision on the Medical-Vocational Guidelines contained in Appendix 2 to Subpart P of Part 404, 20 C.F.R. § 200.00 *et seq.* We reverse and remand for further proceedings.

At the time of the administrative hearing, McDonald was fifty-four years old, had a high school education, and had worked approximately fifteen years as a seamstress and supervisor in a garment factory. In February, 1977, she was injured in an automobile accident. She reported chest, back, and neck pain, but returned to work after ten weeks. By August, however, her symptoms had worsened, and she was hospitalized. She has not worked since that nineday hospital stay.

The medical evidence showed that McDonald had degenerative arthritis and a back injury which placed some limits on her ability to move easily. Her physical problems are aggravated by the pain she feels and by her psychological reaction to the pain.

Clinical psychologist Douglas Stevens saw McDonald twice, first in February, 1979, and then in September, 1980. In his first report, Dr. Stevens characterized McDonald's fear of driving as a "phobic reaction." He added that "her anxiety has generalized to the point that she is now socially withdrawn and very anxious in crowds. She finds herself depressed much of the time." Dr. Stevens administered the Minnesota Multiphasic Personality Inventory (MMPI); McDonald's results indicated an "anxious depressive reaction" and "considerable psychophysiological overlay resulting in a chronic pain syndrome that is of such severity that she finds herself unable to sustain activity at any task for more than a few minutes." Dr. Stevens stated that McDonald was totally disabled by the pain syndrome from any substantial gainful activity. He predicted that even after extensive psychotherapy, McDonald would probably be precluded from performing "some 90% of the jobs she could have previously considered."

In the second examination, Dr. Stevens noted that appellant's condition had worsened. On readministration of the MMPI, he found that her depression, psychophysiological symptoms, and neuroses had become much more severe. Results of the Finger Oscillation Subtest indicated "extreme deficiency in finger dexterity." Dr. Stevens felt that this finding showed the extent to which McDonald's muscular tension had generalized. Dr. Stevens then performed a biofeedback evaluation. The test produced results "typically seen in headache situations" and indicated a "musculoskeletal problem responsible for the tension and pain." Other tests showed abnormally low muscle strength of the deltoid and abdominal muscles, suggesting low back problems.

Nearly all the doctors McDonald consulted commented on the pain she felt and on her reaction to it. Her treating physician, Dr. Taylor, characterized it as "anxiety." Her orthopedic surgeon, Dr. Steele, believed that there was "some effect" on her emotional stability. Another physician, Dr. Ozment, said that McDonald was in a "severe tension state."

At the hearing, appellant testified that she took medication for circulation, diabetes, headaches, nerves, high blood pressure, and pain, and that her back, neck and left arm and leg hurt constantly. McDonald further testified that her hands frequently went to sleep and that she had difficulty gripping things. In a typical day, she said she spent about six daylight hours out of bed; in this time she might start breakfast, start washing the dishes, put laundry in the washer, and feed her children. Any time she felt unable to proceed, she left these chores for her husband and daughter. McDonald said she had stopped going to church on a regular basis because she found she fidgeted constantly and this was embarrassing. She further testified that she had given up her outside activities. Finally, McDonald testified that she was unable to bend, get up from a chair without help, or

sit or stand in one place very long. She indicated her condition had gotten progressively worse.

McDonald's husband also testified; his testimony primarily concerned his wife's nervous state. He related that he often awoke at night to discover his wife crying in the dark and twisting her hands. On such occasions, he found it took an hour or two to soothe her. Mr. McDonald stated that appellant could not stand, sit, or lie in one place for any length of time. He testified that his wife had been a hard worker for years but that now "she can't even sit down and sew ... she'll do a little something and then directly she'll have to rip all that out. And she gets all nervous and she just has to lay it down."

The ALJ found that McDonald could no longer perform her past relevant work. When this finding is made, the burden shifts to the Secretary to show that a claimant has the residual ability to do some other kind of work. *Weber v. Harris,* 640 F.2d 176 (8th Cir.1981). One way to meet this burden is for the Secretary to show that the claimant falls into a "not disabled" category established by its regulations—the so-called "grid." 20 C.F.R. Pt. 404, Subp. P, App. 2, § 200.00 (1981). The factors involved in making this categorization are age, education, previous work experience, and "residual functional capacity" (RFC). An individual's RFC is code language for "what [a claimant] can still do physically even with his impairment." *McCoy v. Schweiker,* 683 F.2d 1138, 1142 (8th Cir. 1982) (banc) (*McCoy*). The Secretary retains the burden of proof of establishing a claimant's RFC by substantial evidence. *Id.* at 1146. Even if the Secretary meets its burden on all four factors and a finding of "no disability" is directed, the grid will not be applied if the claimant's impairment is "nonexertional." *Id.* at 1148.

As this court noted in *McCoy,* the RFC finding will often be the most important issue in a social security claim. 683 F.2d at 1147. The grid will not be applied if the Secretary fails to prove by substantial evidence that the claimant does have the required RFC.

The ALJ in this case found that McDonald retained the residual functional capacity for light work. He made the following observations in determining that appellant was capable of light work:

> The claimant's allegations of pain of the severity to preclude standing for significant periods or light lifting [are] not credible when weighed together with the medical findings relating to the severity of her impairment.... Repeated studies have shown no neurological abnormality ... or nerve root compression. Results of psychological testing appear to reflect the claimant's preoccupation with her allegations of pain but cannot be considered to have established the existence of a neurosis of disabling severity. The conclusion of the claimant's treating physician and examining psychologist as to the claimant's inability to work due to pain appear to have been based on the claimant's complaints rather than objective findings and cannot be given great weight.

The ALJ concluded without discussion that McDonald could perform light work, applied the "grid" and found no disability.

The ALJ erred in applying the grid. This court held in *McCoy* that "[i]f a claimant has a nonexertional impairment, the Guidelines and grid are not controlling and cannot be used to direct a conclusion of disabled or not disabled." 683 F.2d at 1148. Pain and psychiatric problems are both nonexertional impairments. *Id.; see* 20 C.F.R. § 404.1545(c), (d). If an individual has a combination of exertional and nonexertional impairments, as McDonald does, the nonexertional impairments must be given full consideration. The grid should not be used "where nonexertional impairments are so significant that the applicant does not possess the RFC on which the guidelines are based." *McCoy,* 683 F.2d at 1148; *Torres v. Secretary of HHS,* 668 F.2d 67, 69 (1st Cir.1981). Further, in *Tucker v. Schweiker,* 689 F.2d 777 (8th Cir.1982), this court held that because the grid is predicated on a claimant's physical capacity and

 

does not account for nonexertional impairments, it cannot take the place of vocational expert testimony addressed to the question of what jobs a person with the claimant's physical *and* mental limitations can perform. *Id.* at 780; *accord Nicks v. Schweiker,* 696 F.2d 633 at 636 (8th Cir. 1983).

The ALJ's opinion discloses that he found McDonald to have the RFC for light work without giving full consideration to her nonexertional impairments. This Circuit does not require a claimant to produce "objective evidence" corroborating allegations of disabling pain. *Cole v. Harris,* 641 F.2d 613, 615–16 (8th Cir.1981); *Brand v. Secretary of HEW,* 623 F.2d 523, 525 (8th Cir. 1980); *Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir.1978). In any event, McDonald did produce medical evidence and gave testimony that established she suffered from back, arm, neck, and leg pain; some of the medical findings of pain were based on "objective evidence" (x-rays, psychological tests, muscle strength tests) and some were based on McDonald's medical history. The evidence of record regarding pain was not conflicting and should have been given proper weight by the administrative decision-maker. Moreover, the ALJ's treatment of pain was inconsistent with the admonitions of this court that different claimants have different degrees of sensitivity to pain and are entitled to be evaluated with this in mind. *Brand v. Secretary of HEW,* 623 F.2d at 526–27. There was no evidence that McDonald's psychological problems were not totally disabling; in fact, the only evidence on the psychological disability issue is that of the psychologist, and that evidence was that McDonald is disabled.

The uncontradicted evidence showed McDonald's psychological impairments were serious to a degree precluding application of the grid. *Cf. Tennant v. Schweiker,* 682 F.2d 707 (8th Cir.1982) (grid not applicable when impairment is solely nonexertional). The ALJ should have given full consideration to McDonald's claims of pain and to her doctors' reports on the degree of pain and psychological disability. In view of the uncontradicted evidence of McDonald's pain, the grid should not have been applied.

We reverse the decision of the district court and remand with directions to remand to the Secretary for further consideration of McDonald's claim. *Nicks v. Schweiker,* at 365.