Joan M. THOMAS, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 81–4030–CV–W–3.

United States District Court, W.D. Missouri, C.D.

April 11, 1983.

---

Janice P. Noland, Camdenton, Mo., for plaintiff.

Judith Strong, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

Joan M. Thomas, the plaintiff, appeals the final decision of the Secretary of Health and Human Services (Secretary). The Secretary denied plaintiff's application for a period of disability and for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. § 401 *et seq.* Plaintiff contends that she is disabled and that the record does not contain substantial evidence to support the decision of the Secretary. Both Mrs. Thomas and the Secretary have briefed the court on the issue, and all procedural steps necessary to bring this action before the court have been complied with. After reviewing the record before the Secretary and the arguments presented by the parties, the court affirms the final decision of the Secretary.

On February 5, 1979, Mrs. Thomas filed an application for a period of disability and for disability insurance benefits pursuant to 42 U.S.C. § 416(i) and § 423, respectively. Mrs. Thomas claimed that she became disabled on January 16, 1979 due to ankle bone deterioration, chemical dermatitis, hyper-

tension, and high blood pressure. The Social Security Administration (SSA) denied her application, reconsidered, and then denied again.

A full hearing was held before an Administrative Law Judge (ALJ) at plaintiff's request. Plaintiff appeared, testified, and was represented by her attorney at the hearing. Also testifying at the hearing was a vocational expert. The ALJ considered the testimony of the plaintiff, the vocational expert, and the medical documents submitted for the record and concluded that plaintiff was not disabled under the Act through the date of his decision.

Plaintiff appealed the ALJ's decision to the Appeal's Council of the SSA and had submitted to the Council an additional letter by her doctor. The Council considered the letter in upholding the decision of the ALJ. The Council's action made the decision of the ALJ the final decision of the Secretary.

The court has jurisdiction to review the final decision of the Secretary under 42 U.S.C. § 405(g). The statute limits the court's review, though, to a determination of whether the Secretary's decision is supported by substantial evidence.[1] If substantial evidence does exist to support the decision, then the court is bound by it. *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971); *Fitzsimmons v. Mathews,* 491 F.Supp. 423, 425 (W.D.Mo.1980), aff'd, 647 F.2d 862, 863 (8th Cir.1981). The court now turns to the record.

## THE RECORD

Mrs. Thomas was 56 years old at the time of the hearing before the ALJ. She was born in Guirnsey Island, Great Britain, and she received her schooling in England. Although not completely clear, it appears that Mrs. Thomas attended "grade" school for

1. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. at 1427, quoting, *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938); after review of the record as a whole. *Russell v. Secretary of HEW,* 540 F.2d 353, 357 (8th Cir.1976); *Klug v. Weinberger,* 514 F.2d 423, 425 (8th Cir.1975).

48

seven years, had two years of secretarial training, and three years of college while in the armed forces, for a total of twelve years of formal education.

Plaintiff currently resides in a mobile home with her husband in Camdenton, Missouri. They have two children, who are both grown and living away from home.

Mrs. Thomas' job experience began while she was in the armed services in the late 1940s. She did secretarial work in the Pay Corps Office, consisting of filing, bookkeeping, and typing. After leaving the armed forces and moving to the United States there is no record of plaintiff working until 1964. In 1964 and 1965 plaintiff worked as an inspector and labeler for Stevens Hat Co. She worked for K-Mart as a security officer from June 6, 1967 to June 6, 1968, and left the job to follow her husband's work. In 1969 she went to work as a clerk with Night Hawk and continued until May of 1973. At that time she left to go to work at Walmart where the pay was better. She became the manager of the ladies wear department. Mrs. Thomas left Walmart August 6, 1979, for the physical reasons cited in her application for disability benefits.

Plaintiff related that her current medical problems can be traced to an incident that occurred in May of 1977. She either came in contact with or inhaled fumes from a pesticide she was using to spray her roses. As a result of this accident plaintiff claimed that she has stomach problems and no longer eats right, suffers from sleeplessness, and is irritable and nervous. She also maintained that her condition has worsened as manifested by rheumatoid arthritis in her ankles, knees, hands, and spine. She also stated that while she continued to work at Walmart she would become ill for two to three days everytime the store was sprayed.

Mrs. Thomas testified that she can not stand for long periods of time or walk very far without pain in her ankles and her ankles swelling. She also did not believe that she could lift ten pounds, and she stated that she does not drive more than four or five miles, usually to the store or the beauty shop. She spends most of her time sitting at home either knitting or sewing, but that even this hurts her back. She also naps twice a day.

Plaintiff also believed that the spray had affected her in non-physical ways. She claimed that since the accident she was irritable and had trouble getting along with others. She also found it hard to concentrate on projects she started around the house. At the hearing, however, she told the ALJ that she had had no problem understanding the questions or following the hearing generally. Even with all her alleged problems, plaintiff testified that she was looking for a job as a receptionist at the time of the hearing.

Also testifying at the hearing was Dr. Arthur E. Smith, a professor at the University of Missouri, St. Louis. He testified in the capacity of a vocational expert.[2] Dr. Smith classified plaintiff's work as an inspector as an unskilled, and light or sedentary job as those terms are defined in the regulations. He classified her sales clerk work as semiskilled and light. See 20 C.F.R. §§ 404.1567 & 404.1568. He also noted certain transferable skills plaintiff gained from her experience as a clerk: public contact, attention to detail, awareness of the retail industry, and quantitative ability.

The ALJ asked Dr. Smith two hypothetical questions concerning plaintiff's capacity to perform gainful work. First, the ALJ wanted to know whether Dr. Smith believed that plaintiff could be gainfully employed assuming that her exertional impairments would allow her to do sedentary work, but that all the physical, emotional, and mental problems she had testified to were true.[3] The expert believed that the impairments alleged would preclude any

2. The record contains a document that lists Dr. Smith's qualifications to testify as a vocational expert. The court, however, will forego setting out his qualifications except to note that he is qualified to testify in this capacity. The plaintiff does not challenge his qualifications.

3. The first hypothetical question posed to Dr. Smith contained all the impairments alluded to by the plaintiff.

substantial gainful activity. Also under these assumptions Dr. Smith believed that Mrs. Thomas could not return to her former employment. The ALJ then asked Dr. Smith the same question assuming again that the plaintiff could do sedentary work, that her "chemical condition" was cured, that the findings of Dr. Eardley, a psychiatrist who examined plaintiff, were correct, and that plaintiff could only work in a non-polluted environment.[4] With these assumptions in mind and based on plaintiff's transferable skills Dr. Smith believed plaintiff could do such sedentary jobs as timekeeping work, payroll clerk, contribution solicitor, telephone survey worker, telephone representative, and telephone sales. He estimated that 50,000 such jobs exist within the state, and 2,500 within fifty miles of Camdenton.[5]

The medical evidence is from three sources: two letters written by Dr. R.R.

> Assume the claimant lady is 56 years old, she has an education in England of what we would call I guess nine years of—she called it nine years of schooling, plus three years of college and some secretarial school training. She can also, of course, read and write. Assume that I find the claimant's exertional problems do not prevent her from doing sedentary work, would you have an opinion whether the nonexertional problems that I'm about to give you would prevent her from doing sedentary work? These nonexertional problems would be the problems the claimant testified to, assume them to be true. She states she was exposed to some type of fumes when spraying roses in 1977 and since that time has been very sick with her stomach, with stomach trouble, has erratic blood pressure, says she's not able to function. The condition has not improved its become worse since that time. It has given her arthritis in her hands, knees, and spine. She has emotional outbursts and flareups, she can't get along with anyone including her husband. She says she has difficulty in concentrating and can't concentrate for any period, any substantial period of time. Assuming these things to be true—and she has dermatitis and on occasion these chemicals in her system cause breakouts on her arms and other places on her body. Assume these things to be true would claimant in your opinion be able to do any kind of sedentary work?

4. In the second hypothetical the ALJ listed the findings he determined to be credible.

> Claimant's age, education, work background and experience, assume I find she can do sedentary work with the following nonexertional as set forth in the medical cause you to feel that she could not do sedentary work and I'll list those examples now. On January 18, 1980, Dr. Porter, claimant's doctor, stated that he felt the chemical condition was cured, that's in Exhibit 13. By that he is referring to the testified irritation she suffered back in 1977. (Unintelligible) Dr. Jack Eardley examined the claimant psychiatrically on March 1, 1980, at that time his findings were such: "the general appearance, attitude and behavior was not remarkable, very talkative and conversation and mental activity, seemed somewhat anxious about her problem was dismayed over physical limitations but I do not see any psychiatric symptom, have not seen psychiatric symptomatology clinically. Her emotional reactions and mood tendencies note the anxiety of her physical problems. Her (Unintelligible) content reveals no special preoccupation. Her (Unintelligible) resources are consistent with educational attainment. She was oriented to time and place and the person had contact with reality. Judgment and insight appeared adequate. On work related capabilities she understood and carried out appropriate instructions that were appropriate but somewhat anxiously. Her ability to sustain would relate to physical limitations and of course I found she can do sedentary work. The diagnosis was adjustment reaction of adult life associated with anxiety, depressive features. The prognosis was considered fair from a psychiatric viewpoint. (Unintelligible) and he would note psychiatrically that he was not able to elicit paranoid delusional material (Unintelligible). She does talk about [Walmart] and problems she experience with them. We do not view this as a psychiatric (Unintelligible), she appeared to be more of a disgruntled employee.
> Now with those let's also add to her nonexertional impairments the fact that she must be in some nonpolluted, clean atmosphere. Would those exertional limitations, if any, and nonexertional as set forth by Dr. [Eardley] cause you to change your opinion—I'm sorry, let me rephrase it. Would those exertional impairments, nonexertional impairments, as set forth by Dr. [Eardley] if I found that she work in a clear, clean atmosphere allow her to do any kind of sedentary job in your opinion?

5. Dr. Smith based his estimate on "information provided through various public sources by the Division of Employment Security, Department of Labor, labor statistics [sic] Chamber of Commerce, plus the conferences [he had] with individuals in all fields.

Porter, D.O., the plaintiff's doctor, and reports from Dr. Robert Sweet, M.D. and Dr. Jack Eardley, M.D., based on examinations done at the request of the SSA. On January 1, 1980, Dr. Porter responded to a letter of inquiry from the SSA. He wrote that plaintiff's chemical dermatitis caused by the 1977 spraying accident had caused some scarring on her ankles, but that the condition had been clinically cured. He also noted that her hypertension was well controlled with medication and that x-rays failed to indicate any significant back problems. Dr. Porter maintained that Mrs. Thomas' main problem was emotional rather than physical. He found her to have severe anxiety with paranoia; she believed her employer and co-workers were out to get her. Her high blood pressure resulted from her paranoia. He concluded that Mrs. Thomas should be evaluated and treated by a psychiatrist.

At the request of plaintiff, Dr. Porter submitted a letter to the Appeals Council. Again, the doctor stressed her emotional related problems. He wrote that Mrs. Thomas had difficulty associating with people and could not withstand stress. Any criticism of her caused her to become anxious, paranoid, and would result in increasing her blood pressure and heart rate. He concluded by stating "I do not feel that this woman can in anyway be employed on a regular basis at any occupation due to her severe anxiety, underlying paranoia and virtually complete emotional instability."

On February 4, 1980, Dr. Sweet examined Mrs. Thomas at the request of the SSA. He found her to be an anxious, obese woman in no acute distress. For the most part, the examination was unremarkable. The doctor found she had a full range of motion of her ankles, knees, hips and spine. He noted that Mrs. Thomas denied having any of the symptoms attributable to hypertension, and that there was little evidence to support her claim of arthritis in her left ankle. Not only did she have full range of motion of her ankle, but a test for rheumatoid arthritis was negative and x-rays of the ankle showed a normal ankle. Dr. Sweet did notice a depressed mental outlook and some paranoid ideation. The doctor's conclusion was that plaintiff suffered from hypertension, dermatitis, mild anemia, leukocytosis, and psychiatric disorder with some paranoid ideation.

The SSA also directed Mrs. Thomas to submit to a psychiatric evaluation by Dr. Eardley. The doctor had before him the referral information from Drs. Porter and Sweet. He met with her on March 21, 1980, and noted that her dress and hygiene were appropriate. He also noted that she was able to relate to and did cooperate with him. Dr. Eardley found her to have a negative view of her former employer, but did not find her to be exhibiting "any paranoid trend of psychotic proportion or, even, psychiatric proportion in the interview." She did not report any suicidal thoughts.

Mrs. Thomas told the doctor that she does some cooking and dishwashing, goes grocery shopping, and does the laundry, but does not dust or sweep because of her back problems. She fills the rest of her day with yard and garden work when the weather is suitable, watching television (three to four hours a day), and visits over the phone; she has no other social outlets. Finally, Mrs. Thomas expressed doubts about her ability to get along with her relatives and neighbors, but did believe that she got along well with her doctor and store clerks.

Dr. Eardley did not find any severe mental problems. Generally, he found her appearance, attitude, and behavior to be unremarkable. He did believe that her physical limitations caused Mrs. Thomas some anxiety, but not any psychiatric symptomatology. The doctor observed that the plaintiff did not have any special preoccupations; that her sensorium and intellectual resources were consistent with her education; that she was oriented to time, place, person and in contact with reality; and that her judgment and insight were adequate. Based on his observations and the tests he administered to the plaintiff, Dr. Eardley diagnosed her as suffering from an "adjustment reaction of adult life associated with anxiety depressive features." He concluded

that her physical status and not her mental status would determine her ability to work.

## REVIEW OF THE FINAL DECISION

The ALJ found plaintiff to have met the insured status requirements of the Act, but not to be disabled as defined by the Act. He also found that she remained gainfully employed through July 19, 1979, after she had applied for benefits. He concluded that even with her exertional and nonexertional impairments, and considering her age, education, and work experience that plaintiff could perform sedentary work, available in significant numbers in the area where plaintiff resides.

Mrs. Thomas challenges the ALJ's analysis in two respects. She maintains that the physical and emotional problems that have arisen from her accident in 1977 have left her disabled as evidenced by the letter of Dr. Porter. She also contends that the ALJ relied too heavily on the fact that she continued to work until July of 1979.

Disability is defined in Title II [6] of the Act. The definition can be distilled into three elements. One, the claimant must suffer from a medically determinable physical or mental impairment. Two, the impairment must have lasted or be shown to last at least for twelve months, or result in death. Three, the impairment must prevent the claimant from engaging in any substantial gainful employment for the same period. *See Beasley v. Califano,* 608 F.2d 1162, 1164 (8th Cir.1979); *Timmerman v. Weinberger,* 510 F.2d 439, 442 (8th Cir. 1975). The claimant has the burden, in the first instance, of establishing her disability status, *Russell v. Secretary of HEW,* 540 F.2d 353, 356 (8th Cir.1976); *Fitzsimmons v.*

*Mathews,* 491 F.Supp. at 425; *Halsted v. Harris,* 489 F.Supp. 521, 525–26 (E.D.Mo. 1980); and that her disability arose while she was insured by the Act, 42 U.S.C. §§ 416(i)(3)(B) and 423(c)(1)(B). Once the claimant has established that she is disabled and can not return to her former employment then the burden shifts to the Secretary to show by substantial evidence that jobs exist in the national economy that the claimant can perform. *Simonson v. Schweiker,* 699 F.2d 426 at 428 (8th Cir. 1983); *McDonald v. Schweiker,* 698 F.2d 361, 364 (8th Cir.1983); *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982).

Pursuant to the regulations promulgated by the Secretary at 20 C.F.R. § 404 the ALJ initially found plaintiff to be gainfully employed at the time she applied for disability benefits. Mrs. Thomas filed her application on February 5, 1979, and claimed to have been disabled since January 16, 1979. She continued to work at Walmart in the women's wear section until July 19, 1979, making $3.55 per hour. Plaintiff contends that the ALJ relied too heavily on her continuing to work in reaching his decision. The court disagrees. The Act and the regulations are explicit in stating that a person gainfully employed is not disabled. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.-1520(b). *See Beasley v. Califano,* 608 F.2d at 1166. Technically, the ALJ could have stopped at this point and found Mrs. Thomas not disabled.[7] He continued his analysis, however, since Mrs. Thomas was not gainfully employed at the time of the hearing. In reaching his ultimate decision on plaintiff's non-disability, the ALJ did not rely on this finding.

---

6. Title II defines disability as the:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 223(d)(1)(A): 42 U.S.C. § 423(d)(1)(A).

an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.... 223(d)(2)(A); 42 U.S.C. § 423(d)(2)(A).

7. Mrs. Thomas' recourse would have been to file for disability benefits and to claim that her disability started sometime after July 19, 1979; the day she ended her gainful employment. The ALJ's action had this effect.

The ALJ did rule in Mrs. Thomas favor in finding that she could not return to her former employment at Walmart. This finding shifted the burden to the Secretary to prove that the plaintiff was not disabled.[8] "[T]he Secretary must show there are jobs available that realistically suit [the claimant's] qualifications and mental and physical capabilities." *Simonson v. Schweiker,* 699 F.2d at 428; *Cole v. Harris,* 641 F.2d 613, 614 (8th Cir.1981).

■ Application of the Medical Vocational Guidelines in Appendix 2 of Subpart P of 20 C.F.R. § 404 is one way the Secretary can satisfy the shifted burden. *McDonald v. Schweiker,* 698 F.2d at 364. The Medical Vocational Guidelines, also known as the grid, were promulgated by the Secretary pursuant to his authority under 42 U.S.C. § 405(g). The Secretary intended to create an "orderly and uniform framework for analysis and decision of disability claims ...." *McCoy v. Schweiker,* 683 F.2d 1138 at 1141 (8th Cir.1982). The ALJ is bound by the result directed by the grid. *Id.* at 1142.

■ To apply the grid three criteria must be met. First, the ALJ must determine by substantial evidence the residual functional capacity (RFC),[9] age bracket, education bracket, and work experience of the claimant as the four factors are defined by the regulations. 20 C.F.R. § 404.1561. Second, the four factors must match a Rule of the grid. 20 C.F.R. § 404.1569; *McCoy v. Schweiker,* 683 F.2d at 1146. Finally, the claimant must not suffer from any significant nonexertional impairments. Appendix

2, Subpart P of 20 C.F.R. § 404, § 200.-00(e); *McDonald v. Schweiker,* 698 F.2d at 364; *McCoy v. Schweiker,* 683 F.2d at 1148.

The ALJ found Mrs. Thomas' RFC to indicate that she could perform sedentary work,[10] that she is in the advanced age category,[11] that she has the equivalent of a high school education,[12] and that her work experience was in semi-skilled jobs with transferable skills.[13] He found this set of factors to match the criteria for applying Rule 201.27 of Appendix 2. The rule directed a finding of not disabled.

■ Mrs. Thomas challenges the ALJ's finding that she could perform sedentary work. The court finds that substantial evidence supports the ALJ's finding.

Sedentary work is defined in the regulations, 20 C.F.R. § 404.1567 as work performed in a seated position with occasional standing and walking required. A sedentary worker is not required to lift more than ten pounds at any one time. The ALJ concluded that many of the activities of Mrs. Thomas were consistent with the capabilities necessary to perform sedentary work. He noted that she told Dr. Eardley that she sits and watches television three to four hours per day, does yard and garden work when the weather is nice, and is able to cook, wash dishes, do the laundry, and buy the groceries. He also noted that the plaintiff had enough dexterity in her hands to embroider, knit, and sew.

The ALJ further found that plaintiff's complaints of disabling pain were not credible. In this regard, he mentioned her activ-

---

**8.** The ALJ did not explicitly determine whether Mrs. Thomas had an impairment listed in Appendix 1 of Subpart P of 20 C.F.R. § 404. The court assumes that the ALJ, by implication, did not find any of claimant's impairments within the appendix. The court can not find any of her impairments listed and she does not bring any to the attention of the court.

**9.** The RFC factor accounts for what the claimant is capable of doing even with her limitations. The factor represents primarily a medical assessment. 20 C.F.R. § 404.1545.

**10.** Sedentary work and the other work classifications are described at 20 C.F.R. § 404.1567.

**11.** The age categories are set out at 20 C.F.R. § 404.1563.

**12.** A claimant's educational level is determined by her formal education, training, and experiences. 20 C.F.R. § 404.1564.

**13.** Work experience is based on jobs held by the claimant during the fifteen years prior to her filing for benefits; that lasted long enough for the claimant to learn the job; and that constituted substantial gainful employment. 20 C.F.R. § 404.1565.

ities listed above, as well as the fact that the test given Mrs. Thomas for rheumatoid arthritis proved to be negative and the x-ray on her left ankle showed a normal ankle.

The court is well aware that in this Circuit the ALJ can not disregard a claimant's subjective claim of pain just because it is not supported by objective medical evidence, *Simonson v. Schweiker,* 699 F.2d at 429; *McDonald v. Schweiker,* 698 F.2d at 356; *Cole v. Harris,* 641 F.2d at 615–16; and that the ALJ may not use a finding of "not credible" to sidestep this requirement, *Simonson v. Schweiker,* 699 F.2d at 429. It is the responsibility of the ALJ, however, to determine the credibility of those who testify before him. *Fitzsimmons v. Mathews,* 491 F.Supp. at 428, *aff'd,* 647 F.2d at 864. The ALJ is not bound by the testimony of the claimant. *Criswell v. Califano,* 498 F.Supp. 42, 48 (W.D.Mo.1980). Though, if the ALJ rejects the testimony on credibility grounds he must have a reasonable basis for his disbelief. *Lund v. Weinberger,* 520 F.2d 782, 785–86 (8th Cir.1975); *Stuart v. Califano,* 443 F.Supp. 842 at 848 (D.C.1978).

The ALJ did have a reasonable basis for discounting the credibility of Mrs. Thomas' complaints. First, although plaintiff's pain may have inhibited her activities somewhat, she continued to do many things evidencing a capability to do sedentary work. *See Halsted v. Harris,* 489 F.Supp. at 526; *Roark v. Secretary of HEW,* 433 F.Supp. 643, 646 (E.D.Mo.), *aff'd, Roark v. Califano,* 564 F.2d 14 (8th Cir.1977). Second, her claims of pain in her back, left ankle, and her headaches were inconsistent with the medical evidence. Besides the findings already mentioned, Dr. Sweet found that plaintiff has a full range of motion in her ankles, knees, wrists, and spine. Her own physician, Dr. Porter, wrote that her chemical dermatitis was clinically cured, her hypertension was medically controlled, and she had no significant back problems. The medical records also fail to indicate any secondary damage from her high blood pressure. As for her headaches,

plaintiff herself, stated that aspirin relieved the pain. *See Brand v. Secretary of HEW,* 623 F.2d 523, 526 n. 3 (8th Cir.1980); *Criswell v. Califano,* 498 F.Supp. at 48. Finally, the court notes that the ALJ in actuality did not completely disregard the testimony of Mrs. Thomas. He classified her as only able to do sedentary work indicating that he accepted, in part, her claims of ankle, leg, and back problems. He also included as part of her work restrictions that she could only work in a pollution free environment lending credence to her claim of physical illness brought on by chemical spraying.

Based on physical limitations only, it is as obvious, as these matters can be, that Mrs. Thomas could perform sedentary work. Dr. Porter, her physician, however, believed that her emotional problems prevented her from ever returning to gainful employment. This view of plaintiff's mental state was not shared however, by Dr. Eardley, the psychiatrist to whom the plaintiff was referred by the SSA. He diagnosed Mrs. Thomas as only suffering from mid-life crisis brought on by the onset of her physical problems. He did not believe the plaintiff to have any severe mental or psychological problems.

Although considerable deference should be afforded the view of the claimant's treating physician, the ALJ is not bound by the opinion of the physician that his patient is disabled. *Vasquez v. Schweiker,* 701 F.2d 733 at 736 (8th Cir. 1983); *Beasley v. Califano,* 608 F.2d at 1165; *Behnen v. Califano,* 588 F.2d 252, 254 (8th Cir.1978); *Janka v. Secretary of HEW,* 589 F.2d 365, 369 (8th Cir.1978). The criteria set out in the Act, and not the opinion of the physician is the yardstick for determining disability. Also, although, great weight should normally be accorded the opinion of the claimant's physician relative to the opinion of a consulting physician for the SSA, two reasons justify acceptance of Dr. Eardley's diagnosis over Dr. Porter's opinion in contravention of the norm. *See Brand v. Secretary of HEW,* 623 F.2d at 527 n. 6. Dr. Eardley's medical practice consists of this type of evaluation whereas Dr. Por-

ter's does not; the former is a psychiatrist and the latter a general practitioner. Second, Dr. Eardley based his conclusions not only on his expertise in the area, but also on the tests he administered to Mrs. Thomas. Dr. Porter's opinion was based purely on observation. *See Janka v. Secretary of HEW,* 589 F.2d at 369; *Russell v. Secretary of HEW,* 402 F.Supp. 613 at 619 (D.C.1975). Dr. Eardley's conclusion is further supported by the comments of the plaintiff to him during the evaluation. She informed him that she believed she got along well with people other than her family and neighbors. Based on the foregoing the court can not say that the ALJ erred in his resolution of this evidentiary conflict. *See Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Janka v. Secretary of HEW,* 589 F.2d at 369; *Timmerman v. Weinberger,* 510 F.2d at 444; *Fitzsimmons v. Mathews,* 491 F.Supp. at 425.

 The ALJ, however, quite properly did not conclude his analysis with the result dictated by the grid. All the requirements for applying the grid were not satisfied; Mrs. Thomas alleged such nonexertional impairments as pain and mental problems. *McCoy v. Schweiker,* 683 F.2d at 1148. "If a claimant has a nonexertional impairment, the Guidelines and grid are not controlling and can not be used to direct a conclusion of disabled or not disabled without regard to other evidence, such as vocational testimony." *Id.* at 1148. When nonexertional impairments are present the grid "cannot take the place of vocational expert testimony addressed to the question of what jobs a person with the claimant's physical and mental limitations can perform." *McDonald v. Schweiker,* 698 F.2d at 364–65; *Tucker v. Schweiker,* 689 F.2d 777, 780 (8th Cir.1982). In accordance with the regulations and the case law, the ALJ presented his findings to Dr. Smith, the vocational expert, who concluded, considering plaintiff's nonexertional as well as exertional impairments, that Mrs. Thomas could work as a timekeeper, payroll clerk, contribution solicitor, telephone surveyor, telephone representative, telephone salesperson, and other jobs requiring related capabilities.[14]

The court concludes, after carefully reviewing the entire record, that substantial evidence exists to support the final decision of the Secretary. The medical evidence supports the finding that plaintiff did not suffer from a disabling physical, mental, or emotional impairment. The testimony of the vocational expert supports the finding that taken together plaintiff's impairments do not prevent her from being gainfully employed. Moreover, based on plaintiff's activities, the ·jobs cited by the expert as appropriate for plaintiff appear well suited to her capabilities. Accordingly, the court affirms the decision of the Secretary and grants the Secretary's motion for summary judgment.

ALJ addressed with sufficient particularity the impairments of the plaintiff. *Behnen v. Califano,* 588 F.2d at 255. *See Daniels v. Mathews,* 567 F.2d 845, 848 (8th Cir.1977); *Dressel v. Califano,* 558 F.2d 504, 508–09 (8th Cir.1977).

---

**14.** Although not challenged by Mrs. Thomas, the court pauses to note that the hypothetical question put to Dr. Smith by the ALJ satisfied this Circuit's line of cases condemning the use of generalized hypothetical questions. *See Simonson v. Schweiker,* 699 F.2d at 430. The