Glenville J. NETTLES, Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health & Human Services, Appellee.

No. 82–2127.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1983.
Decided Aug. 18, 1983.

Murrey L. Grider, Pocahontas, Ark., for appellant.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., George W. Proctor, U.S. Atty., Little Rock, Ark., Frank V. Smith, III, Regional Atty., Charlene M. Seifert, Asst. Regional Atty., U.S. Dept. of Health and Human Services, Dallas, Tex., for appellee.

Before ROSS and McMILLIAN, Circuit Judges, and COLLINSON,* District Judge.

ROSS, Circuit Judge.

Glenville Nettles appeals from the district court's [1] entry of summary judgment affirming the Secretary of Health and Human Services' final decision denying disability benefits. Because the administrative law judge failed to shift the burden of proof to the Secretary as required in the present case, and applied the Medical-Vocational Guidelines to determine disability without adequately considering appellant's evidence relating to a nonexertional impairment, we reverse and remand for further proceedings.

Nettles, a forty year old plumber with a high school education, was injured on October 3, 1979, when he fell from a scaffold while on the job. As a result of the fall, he underwent surgery for a subtalar fracture dislocation of his left foot, and was hospitalized from October 3 to October 9, 1979. Records of Nettles' treating physician and surgeon, Dr. Glenn E. Dickson, indicate that on November 13, 1979, Nettles' foot looked good, but he was in moderate pain requir-

---

* The Honorable William R. Collinson, United States Senior District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas.

ing an ankle corset and pain medication. An examination on December 11, 1979, revealed that Nettles was developing degenerative changes in the subtalar joint. By March 4, 1980, Dr. Dickson reported that Nettles had developed "a lot of subtalor [sic] arthritis"[2] which is very painful and would probably require a triple arthrodesis. On April 15, 1980, the subtalar joint looked "very bad," and Nettles still required the use of a cane to walk.[3]

In a letter dated November 20, 1980, Dr. Dickson stated that Mr. Nettles had:

developed significant subtalor [sic] osteoarthritis. An injury of this type does require several months to heal and frequently does end up requiring a triple arthrodesis.

Mr. Nettles was last seen in my office October 7, 1980. I do not feel that within the next six months that [sic] he will be able to do any type of gainful employment that would require any significant amount of standing or walking.

Record at 94. Dr. Dickson also filed disability certificates for the periods of October 3, 1979, to November 30, 1980, and October 3, 1979, to April 1981, stating that Nettles could be expected to be totally incapacitated during that time.

At the hearing before the ALJ, Nettles testified that he was still unable to walk without the use of a cane and that he was taking Darvocet N–100 several times daily for the constant severe pain in his foot. He testified that although the medication dulled the pain, it also made him drowsy, particularly when he was sitting. Nettles also stated that he could walk for short distances using his cane and could occasionally drive short distances before having to take pain medication which caused him to become too drowsy to drive. However, he indicated that he had been unable to perform any household chores or to engage in his hobbies of hunting and fishing since the accident. On a typical day Nettles would talk on the CB radio, try to walk around a little, watch television and retire to bed early. Nettles' testimony as to his activities and constant pain were corroborated by his wife.

On April 21, 1980, Nettles filed an application for disability benefits for the period commencing October 2, 1980. When the Social Security Administration denied benefits both initially and on reconsideration, Nettles sought a review hearing before an administrative law judge. After a hearing on November 20, 1980, the ALJ held on January 8, 1981, that Nettles was not entitled to disability benefits under sections 216(i) and 223[4] of the Social Security Act. The ALJ found that although Nettles was incapable of returning to his former employment, he was not disabled in light of his residual functional capacity (RFC) to engage in sedentary work, and his age, education and work experience. See 20 C.F.R. § 404.1569, App. II, § 201.28 (1982).

After the ALJ's decision was approved by the appeals council on April 30, 1981, Nettles sought judicial review of the Secretary's final decision. See 42 U.S.C. § 405(g). On September 7, 1981, the district court entered summary judgment in favor of the appellee Secretary on the grounds that there was substantial evidence in the record to support the Secretary's findings.

■ It is firmly established that the findings of fact regarding disability benefits are to be considered conclusive if supported by substantial evidence on the record as a whole. See, e.g., McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir.1983); Barker v. Harris, 650 F.2d 138, 139 (8th Cir.1981); 42 U.S.C. § 405(g).[5] In addition, it is the

2. Record at 90.

3. Id.

4. See 42 U.S.C. §§ 416(i), 423 (Supp.1981).

5. As this court noted in McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir.1983), "this standard of review is more than a rubber stamp for the Secretary's decision." Substantial evidence is more than a mere scintilla of evidence—it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," taking into account whatever in the record fairly detracts from its weight. Id. (citation omitted). See also Barker v. Harris, 650 F.2d 138, 139 (8th Cir.1981).

court's duty to review the disability benefit decision to determine if it is based on legal error (*i.e.*, erroneous legal standards, incorrect application of the law). *See, e.g., Simonson v. Schweiker,* 699 F.2d 426, 428 (8th Cir.1983); *Nicks v. Schweiker,* 696 F.2d 633, 634 (8th Cir.1983); *Adams v. Weinberger,* 548 F.2d 239, 243 (8th Cir.1977); *Aubeuf v. Schweiker,* 649 F.2d 107, 112, 114 (2d Cir. 1981). In order to qualify for disability benefits, a claimant bears the burden of proving that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *See McMillian v. Schweiker, supra,* 697 F.2d at 220, 42 U.S.C. § 423(d)(1)(A). However, once the claimant establishes that he cannot return to his past relevant work because of an impairment:

> the burden shifts to the Secretary to prove with substantial evidence that the applicant has the RFC to do other kinds of work, and that his RFC, age, and so forth fit him to do some job that exists in the national economy. The grid, if applicable, establishes that jobs exist for certain kinds of people. The Secretary must still show that the claimant is a member of one of the groups described in the grid. This burden includes the duty to establish by medical evidence that the claimant has the requisite RFC.

*McCoy v. Schweiker,* 683 F.2d 1138, 1146–47 (8th Cir.1982) (en banc). *See, e.g., Simonson v. Schweiker, supra,* 699 F.2d at 429;

*McDonald v. Schweiker,* 698 F.2d 361, 364 (8th Cir.1983).[6]

■ In the present case it is clear that despite a finding that Nettles could not return to his previous occupation as a plumber, the ALJ failed to shift the burden to the Secretary to prove that the claimant had the RFC to do other work that exists in the national economy. We are not convinced, based on the present record, that the ALJ would have reached the conclusion that Nettles retained the capacity to perform at least sedentary work had the ALJ correctly shifted the burden of proof to the appellee.[7]

■ In addition, our review of the record convinces us that the ALJ erred in relying solely on the Medical-Vocational Guidelines and the so-called "grid," [8] to determine that appellant was not disabled within the meaning of the Act, without giving adequate consideration to appellant's nonexertional impairment of pain. *See, e.g., Simonson v. Schweiker, supra,* 699 F.2d at 429; *Nicks v. Schweiker, supra,* 696 F.2d at 636; *McCoy v. Schweiker, supra,* 683 F.2d at 1148–49. As we recently reiterated in *McDonald v. Schweiker, supra:*

> This court held in *McCoy* that "[i]f a claimant has a nonexertional impairment, the Guidelines and grid are not controlling and cannot be used to direct a conclusion of disabled or not disabled." 683 F.2d at 1148. Pain and psychiatric problems are both nonexertional impairments. *Id.;* see 20 C.F.R. § 404.1545(c), (d). If an individual has a combination of exer-

**6.** "Residual functional capacity is defined as what [a claimant] can still do physically even with his impairment." *McDonald v. Schweiker,* 698 F.2d 361, 364 (8th Cir.1983) (quoting *McCoy v. Schweiker,* 683 F.2d 1138, 1142 (8th Cir.1982) (en banc)).

**7.** It would appear that the ALJ's finding that Nettles retained an RFC for sedentary work was based primarily on Dr. Dickson's November 20, 1980 letter stating that the doctor did not "feel within the next six months that [Nettles] will be able to do any type of gainful employment that would require any significant amount of standing or walking." (Ex. 14). The ALJ interpreted this statement to indicate "that the claimant remains capable of work

wherein he is required during the course of an eight hour work day to neither lift nor stand for significant periods of time." Record at 11. We are at somewhat of a loss to understand the ALJ's expansive interpretation of Dr. Dickson's letter, particularly in light of Dr. Dickson's contemporaneous certificates explicitly stating Nettles was totally incapacitated from October 3, 1979, to April 1981. *See* Record at 91, 95. Moreover, we cannot conclude that this evidence, along with the other evidence in the record, meets the Secretary's burden of proving appellant's RFC by substantial evidence.

**8.** *See* 20 C.F.R. § 404.1569 & App. II, §§ 200.-00, 201.28 (1982).

tional and nonexertional impairments, * * * the nonexertional impairments must be given full consideration. The grid should not be used "where nonexertional impairments are so significant that the applicant does not possess the RFC on which the guidelines are based." *McCoy,* 683 F.2d at 1148; *Torres v. Secretary of HHS,* 668 F.2d 67, 69 (1st Cir.1981). Further, in *Tucker v. Schweiker,* 689 F.2d 777 (8th Cir.1982), this court held that because the grid is predicated on a claimant's physical capacity and does not account for nonexertional impairments, it cannot take the place of vocational expert testimony addressed to the question of what jobs a person with the claimant's physical *and* mental limitations can perform. *Id.* at 780; *accord Nicks v. Schweiker,* 696 F.2d 633 at 636 (8th Cir. 1983).

698 F.2d at 364–65. *See also Simonson v. Schweiker, supra,* 699 F.2d at 428–29.

■ This court has consistently held that an ALJ must give serious consideration to a claimant's allegations of pain and may not disregard subjective evidence concerning pain merely because it is not fully corroborated by objective evidence. *See Simonson v. Schweiker, supra,* 699 F.2d at 429; *McDonald v. Schweiker, supra,* 698 F.2d at 365; *Nicks v. Schweiker, supra,* 696 F.2d at 636; *Brand v. Secretary of H.E.W.,* 623 F.2d 523, 526 (8th Cir.1980); *Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir.1978). "[D]ifferent claimants have different degrees of sensitivity to pain and are entitled to be evaluated with this in mind." *McDonald v. Schweiker, supra,* 698 F.2d at 365 (citing *Brand v. Secretary of H.E.W., supra,* 623 F.2d at 526–27).

In his decision the ALJ ostensibly considered Nettles' subjective allegations of severe pain, but rejected these complaints as a matter of credibility primarily because of the absence of objective physical signs of pain and the purported inconsistencies between Nettles' daily activities and the existence of severe pain. Although it is clear that the ALJ may disbelieve the appellant's subjective complaints of pain "because of inherent inconsistencies or other circumstances," he may not circumvent the above cited principles "under the guise of credibility findings." *Simonson v. Schweiker, supra,* 699 F.2d at 429. Our review of the record convinces us that the ALJ did not fully apply the principles regarding pain and that his conclusion concerning complaints of pain is not supported by substantial evidence.

■ Nettles fully established the existence of a serious injury to his ankle, and the medical reports in evidence not only fail to contradict his allegation of severe pain, but in fact lend credence to those complaints. It seems clear that during the period of time in question, Nettles was suffering from a painful degenerative condition which required substantial medication [9] and the use of a cane, severely limited his activities, and was expected to require additional surgery. Furthermore, we cannot agree that Nettles' activities, largely limited to taking very short walks, watching television and driving a car on an infrequent basis for short distances, were inconsistent with his testimony, corroborated by his wife, concerning his severe pain. *Cf. Simonson v. Schweiker, supra,* 699 F.2d at 429 (short walks and driving a car not inconsistent with severe pain); *McDonald v. Schweiker, supra,* 698 F.2d at 363 (fact that claimant engaged in household chores not inconsistent with severe pain). Uncontroverted evidence showed that after his accident, Nettles, who had been involved in strenuous labor for many years, was unable to engage in even his hunting and fishing hobbies or the household chores he had routinely performed previously. Thus, in light of the absence in the record of a legitimate basis for the ALJ's credibility finding, we must conclude that he erred in discounting appellant's complaints of pain and in apply-

---

**9.** We note that in making his determination that Nettles was able to do sedentary work the ALJ apparently failed to consider Nettles' testimony that the medication caused him to fall asleep when sitting. *See* Record at 41.

ing the "grid." *See Simonson v. Schweiker, supra,* 699 F.2d at 430.

In summary, we find that: (1) the ALJ failed to shift the burden of proving that Nettles had a residual functional capacity to do some work in the economy; (2) the ALJ failed to give proper consideration under this court's guidelines to Nettles' allegations of severe pain; (3) the record regarding pain was not inconsistent; and (4) in the absence of testimony by a vocational expert as to what jobs a person with Nettles' specific exertional and nonexertional impairments could perform, the Secretary has not met his burden of proving that appellant could perform other work during the period of time in question. Accordingly, we reverse the judgment of the district court and remand with directions to remand to the Secretary for further consideration of appellant's claim in accordance with the principles discussed in this opinion. *See McDonald v. Schweiker, supra,* 698 F.2d at 365; *Nicks v. Schweiker, supra,* 696 F.2d at 636.